COMMONWEALTH *vs.* VINCENT J. MORRIS
(and a companion case [1]).

Suffolk.  September 21, 1970. — October 30, 1970.

Present: SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Search and Seizure.  Error,* Whether error shown.  *Arrest.  Taxation,*
Cigarette tax.  *Practice, Criminal,* Suppression of evidence.

Information received by a tax examiner, in the course of an official in-
vestigation of offences under G. L. c. 64C, from the driver of a con-
cern's truck from whom he bought cigarettes bearing counterfeit tax
stamps while the driver was in possession of the truck and of unstamped
cigarettes therein and was transporting and selling the cigarettes, as set
forth in the examiner's affidavit in support of an application for a search
warrant of the concern's trucks and warehouse, was sufficiently reliable
to indicate probable cause for issuance of the warrant.  [221–222]
At the joint trial of indictments against two defendants for offences
under G. L. c. 64C, testimony by a police officer and by a tax exam-
iner sufficed to link one of the defendants to sales of unstamped cigar-
ettes and to certain incriminating notations and to warrant his con-
viction, although upon proper objection and exception such testimony
presumably would have been excluded, or admitted against the other
defendant only.  [224]
Conversations by police officers with a defendant during an investiga-
tion of offences under G. L. c. 64C, while the officers were searching
with a warrant premises in which he was present, showed probable
cause for the arrest of another defendant, who entered the premises
during the search, for uttering a false cigarette stamp in violation
of § 37.  [225]
The defendant in a criminal case, in his argument before this court, was
not entitled to contend that oral statements made by him should
have been suppressed where a motion to suppress by him referred
only to "personal property and business records."  [225]

EIGHT INDICTMENTS found and returned in the Superior
Court on May 8, 1968.

Motions to suppress evidence were heard by *Goldberg, J.,*
and the cases were heard by him without jury.

[1] Commonwealth *vs.* Mario Lindbergh DeCristoforo.

*Matthew T. Connolly* for the defendant Morris.

*Thomas C. Troy* for the defendant DeCristoforo.

*David G. Nagle, Jr.,* Assistant Attorney General, *& Paul E. Tsongas,* Deputy Assistant Attorney General, for the Commonwealth.

CUTTER, J.   Morris and DeCristoforo were each indicted for various offences under G. L. c. 64C, involving the sale of cigarettes without the tax stamps required by that chapter. Each defendant waived trial by jury.   They were tried together.   A Superior Court judge found them guilty on the several indictments.   The issues presented by each defendant's bill of exceptions are discussed separately.

### THE MORRIS CASE.

Morris, in his brief, argues only his exception to the denial of his motion to suppress certain evidence.   This had been obtained by executing seven warrants authorizing the search of six vehicles owned by Linda's Industrial Catering Corp. (Linda's) and Linda's warehouse and premises at 30 Revere Beach Parkway, Revere.   Morris asserts that the affidavits, on which the search warrants were based, "are insufficient on their face" and reflected no probable cause for issuing the warrants.   One affidavit, sworn to by William F. Toomey, senior tax examiner of the State Department of Corporations and Taxation, is reproduced in part in the margin.[2]

---

[2] In the following excerpts from the affidavits, which Morris states to have been uniform in content, capital letters in brackets have been inserted for convenient reference to the material which follows such letters respectively.   A typical affidavit states, "2. Based upon personal observation, knowledge and belief, I have the following information: [A] That Linda's Industrial Catering Corp. is presently located at 30 Revere Beach Parkway, Revere, Mass., . . . [and is not] licensed . . . pursuant to . . . [G. L. c. 64C] to sell cigarettes; [B] that on April 16 at approximately 12:10 p.m. and on April 17 at approximately 7:30 a.m., I observed on display on trucks registered to Linda's . . . and bearing license numbers A28–892 and A28–889 cigarette packages that bore counterfeit tax impressions; that the[se] trucks . . . were traveling . . . within an area bounded by Cambridge and Portland Streets . . . [near] Government Center . . . Boston; that on April 16, at approximately 12:10 p.m., I purchased a pack of cigarettes bearing a counterfeit meter tax impression from the truck driver of the truck bearing . . . number A28–889. [C] Based on reliable information from Thomas Dolan, a senior tax examiner . . . I have the following information: That Mr. Dolan purchased two packages of cigarettes, both bearing counterfeit tax meter impressions on April 17th from a truck driver of the truck bearing the license number A28–892 in the

Morris in his brief asserts no objections to the affidavit, so far as based on Tax Examiner Toomey's own knowledge (see fn. 2, material following point [B]). He argues that the information received from Tax Examiner Dolan (see point [C]) is merely cumulative and adds nothing to Toomey's own observations. He admits, in effect, that it may be inferred that Toomey learned from department records that Linda's had no cigarette seller's license (see point [A]). A similar inference, we think, is permissible concerning the motor vehicle registrations and the address of Linda's premises and warehouse in view of the existence and scope of State corporation and motor vehicle registration records. See G. L. c. 90, §§ 2, 30; c. 155, § 2; c. 156B, §§ 3, 6, each as amended.

Morris's principal contention is that the information (see point [D]) received from the truck driver is inadequately supported. He asserts in effect that the driver's statements must be treated as constituting a "tip" by "an informer," and that reliability of the tip must be verified in reasonable degree. See *Aguilar* v. *Texas*, 378 U. S. 108, 113–116; *Spinelli* v. *United States*, 393 U. S. 410, 414–419.

If Toomey knew from public records that the trucks were registered to Linda's, we need not reach the question argued, for there need be no reliance on the driver's statements. In any event, we do not regard the information received by Toomey from the driver as an informer's "tip." Toomey himself, in the course of an official investigation, had talked to the driver of one truck. He had bought from that driver

---

same area . . .. [D] Based on information from a conversation which I held with the truck driver of the truck bearing the number A28–889 . . . at approximately 7:30 a.m. on April 17th . . . the driver said that Linda's . . . possesses six trucks of which these two bearing the license numbers A28–892 and A28–889 were two; . . . in the afternoon the custom of the trucks was to load non-perishable merchandise onto the trucks at . . . [Linda's] warehouse and premises . . . at 30 Revere Beach Parkway . . . Revere. 3. Based upon the foregoing . . . and upon my personal knowledge, observation and belief, there is probable cause to believe that the property hereinafter described is unlawfully possessed . . . [by] Linda's . . . at its warehouse and . . . upon its trucks . . .. 4. The property for which I seek . . . a search warrant is the following: Mixed brands of cigarettes in cases, half cases, cartons, and packages on display in racks in trucks belonging to Linda's . . . and located on the premises of Linda's . . . at 30 Revere Beach Parkway, which cigarettes bear counterfeit tax meter impressions in violation of . . . [c. 64C]."

cigarettes with counterfeit tax stamps. He had obtained from this vendor information about the owner's name and address, susceptible of substantial verification from public records. The driver, at the time when he talked to Toomey, was in possession of one of the trucks and also in possession of, and engaged in transporting and selling, unstamped cigarettes. His remarks, directly to Toomey, the affiant, consequently may be regarded as reliable, not only as the statement of one operating a business but also as, in some degree, admissions by the driver against his own interest. See *Commonwealth* v. *Lepore*, 349 Mass. 121, 123; *Commonwealth* v. *Saville*, 353 Mass. 458, 461 (and cases cited; but see *Saville* v. *O'Brien*, 420 F. 2d 347 [1st Cir.]); *Commonwealth* v. *Von Utter*, 355 Mass. 597, 600 (but see *Von Utter* v. *Tulloch*, 304 F. Supp. 1055, 1057 [D. Mass.]). See also *Commonwealth* v. *Wilbur*, 353 Mass. 376, 385, cert. den. 390 U. S. 1010; *Manley* v. *Commonwealth*, 211 Va. 146, 150–151. Morris's motion to suppress was properly denied.

*Exceptions overruled.*

THE DECRISTOFORO CASE.

DeCristoforo was found guilty (a) of uttering a false cigarette tax stamp, (b) of selling unstamped cigarettes, and (c) of transporting unstamped cigarettes, in violation, respectively, of G. L. c. 64C, §§ 37, 34, and 35, inserted by St. 1966, c. 435, § 5.

1. We deal first with his exceptions to the denial of requested rulings that the Commonwealth had failed to prove beyond a reasonable doubt each of the offences charged.[3] The evidence admitted against DeCristoforo is summarized below.

Sergeant Finan of the State police, the first witness, went to 30 Revere Beach Parkway, Revere, with search warrants, which were shown to Morris. In a locker cigarettes with

---

[3] It does not appear to be argued that the evidence admitted against Morris alone showed no violation of the three statutory sections. The contention is merely that no evidence admitted against DeCristoforo was adequate to connect him with the cigarettes.

counterfeit tax impressions were found. Morris told the officers that he had bought the business a week before the search. He "could not produce a license for the cigarettes." There was further conversation between Morris and the searching officers, which was admitted only against Morris.[4] DeCristoforo entered the premises during the search.

Officer Schneiderhan of the State police testified that cigarettes were seized from some trucks which arrived at the premises during the search. He "corroborated . . . [Sergeant] Finan's testimony as to the . . . conversation [see fn. 4] with . . . Morris." The bill of exceptions does not show that this corroborating testimony was admitted only against Morris or subject to any exception.

Peter N. Stevenson, once an accountant for Linda's, testified that on two or three occasions he had put cash in an envelope marked "Lindy" and delivered the envelope to DeCristoforo. This testimony was admitted against DeCristoforo "on the assumption that it would be connected up," presumably with the cigarette transaction.

Tax Examiner Toomey testified (a) about the circumstances of the search which produced 1,550 packages of cigarettes with counterfeit stamps; (b) that he and another had bought from two of Linda's "canteen" trucks cigarettes with counterfeit stamps; and (c) that Linda's had no license to sell cigarettes. Toomey "also testified that Morris identified . . . DeCristoforo . . . [as] having sold him the cigarettes" and that Morris had stated that Toomey "would find a clipboard with white papers on which the name 'Lindy' and monetary amounts were marked, representing purchases of cigarettes and payments to 'Lindy.' " These papers were received in evidence and showed entries on various dates in March and April, 1968, of various sums against the name Lindy. The judge ruled that these papers were admissible only against Morris "unless connected with DeCristoforo."

---

[4] Morris stated that he had bought the cigarettes from one "Lindy" and "produced bills on at least one of which the name 'Lindy' appeared, together with a numerical figure." Morris identified DeCristoforo as the vendor of the cigarettes, known to him as "Lindy."

The judge limited to Morris further testimony by Toomey (a) about a conversation between Finan and Morris "in which Morris identified . . . DeCristoforo as the man who sold him the cigarettes," and (b) that Morris was paying Lindy $2.63 a carton for cigarettes. Subject to DeCristoforo's exception, Toomey also testified that in a conversation between DeCristoforo, on the one hand, and a tax agent and two police officers, on the other, DeCristoforo was addressed as "Lindy" and responded to that name.

At the close of the Commonwealth's case, DeCristoforo moved to strike the testimony of Sergeant Finan, Officer Schneiderhan, Stevenson, and Tax Examiner Toomey. This motion was denied subject to DeCristoforo's exception.

The somewhat obscure bill of exceptions does not clearly establish that there was objection and exception in behalf of DeCristoforo (1) at any stage of the examination of Officer Schneiderhan, especially when he "corroborated" Sergeant Finan's testimony, and (2) with respect to one part of Toomey's testimony in which he stated that Morris (i) identified DeCristoforo as the person who had sold him the cigarettes and (ii) said that the notes on the clipboard represented purchases of cigarettes and payments to Lindy. This testimony sufficed to link DeCristoforo to the sales of the unstamped cigarettes and to the clipboard notes, although, upon proper objection, it presumably would have been excluded or limited to Morris.

The burden is upon the excepting party to show clearly in his bill of exceptions the evidence and circumstances upon which he relies to establish error of law concerning a matter where an exception has properly been saved. Our rule to this effect is clear. See *Donahue* v. *Kenney*, 330 Mass. 9, 12; *Growers Outlet, Inc.* v. *Stone*, 333 Mass. 437, 444. The burden thus resting upon DeCristoforo has not been sustained with respect to showing proper objection and exception to the admission of Schneiderhan's testimony and the parts of Toomey's testimony already mentioned.

2. There is no merit to exceptions based (a) upon the contention that DeCristoforo was arrested without probable

cause and (b) upon the denial of his motion to suppress certain evidence. A violation of G. L. c. 64C, § 37, is punishable by imprisonment for not more than five years. It is thus a felony. See G. L. (Ter. Ed.) c. 274, § 1; c. 279, § 23. The conversations with Morris at the time of the search amply showed probable cause for proceeding against DeCristoforo for an offence constituting a felony.

Since the arrest was not illegal, it provides no possible basis for contending that illegality so tainted any oral statements made by DeCristoforo at the time of the arrest as to require their suppression. In addition, DeCristoforo's motion to suppress did not ask that any oral statements be suppressed. It refers only to "personal property and business records." His brief does not argue that any tangible property was illegally taken from him. He cannot argue for the first time in this court (see *Commonwealth* v. *Penta*, 352 Mass. 271, 277) that oral statements also should be suppressed.

*Exceptions overruled.*