487 F.2d 651
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Joseph STONER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joyce Lee MARTIN, a/k/a Joyce M. Teagarden, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sherrie Ann STONER, Defendant-Appellant.
 Nos. 73-1158-73-1160.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 8, 1973.
Decided Nov. 20, 1973.
 
 1
 A. V. McDowell, Memphis, Tenn., and John C. Humpage, Topeka, Kan., on briefs, for appellants.
 
 
 2
 William A. McTighe, Jr. and Glen Reid, Jr., Asst. U. S. Attys., for appellee; Thomas F. Turley, Jr., U. S. Atty., Western District of Tenn., Memphis, Tenn., on brief.
 
 
 3
 Before PHILLIPS, Chief Judge, CECIL, Senior Circuit Judge, and ALLEN,* District Judge.
 
 
 4
 ALLEN, District Judge.
 
 
 5
 This is an appeal from judgments of conviction as to each of the defendant-appellants, finding them guilty of violating 18 U.S.C. Sec. 2314 and 18 U.S.C. Sec. 2.
 
 
 6
 Appellants Robert Joseph Stoner and Joyce Lee Martin were tried jointly, and appellant Sherrie Ann Stoner was granted a severance and given a separate trial after the convictions of Robert Stoner and Joyce Martin. The offense charged was the crime of transporting in interstate commerce stolen property in the value of $5,000 or more. The main issue raised on these appeals goes to the asserted invalidity of the original warrantless search of a hotel room occupied by the Stoners, and a search executed pursuant to a search warrant issued after the warrantless search.
 
 
 7
 The evidence as developed on the motion to suppress and at the trial reveals that the appellants arrived in Memphis, Tennessee on March 15, 1971, and on that day Robert Stoner rented a 1971 Pontiac. Subsequently, the appellants went to the J. B. Hunter store in Memphis. While at the store, appellant Martin took a bottle of perfume and then secreted a hair dryer which Robert Stoner handed her. Appellant Martin was arrested, but before her arrest occurred, she threw the hair dryer under the 1971 Pontiac. The Stoners left the store and returned to the Pontiac.
 
 
 8
 The next event which occurred was a call from James Conrad, an employee of a Memphis bonding company, to Detective Maxwell of the Memphis Police Department, informing him that Conrad had been contacted by one Bobby Clark of West Memphis, Arkansas, who requested him to make bond for Mrs. Martin. Detective Maxwell testified that he knew Bobby Clark, who had a police record, and that Bobby Clark traveled with Bill Sides, who was wanted on a postal warrant. Maxwell then conveyed this information to Postal Inspector Holman and to the West Memphis Police, including also a description of the 1971 Pontiac.
 
 
 9
 Subsequently, Inspector Holman conveyed the information received from Maxwell to Postal Inspector Hannah and requested him to look for Sides in West Memphis. Hannah then went to West Memphis, where he was advised that the Police of that city had spotted the Bobby Clark car at Ramada Inn. Upon receiving this information, he went to a location near the Ramada Inn and, together with Captain Gaia and Sergeant Merrill of the West Memphis Police, stopped the suspected vehicle near the Ramada Inn. The traveler initially identified himself as James Clark, then as Dean West, and then as Robert Stoner. An arrest was made by Captain Gaia of Stoner for registering at the motel under the false name of Clark. Thereupon, Stoner was taken back to the motel in Hannah's automobile.
 
 
 10
 Captain Gaia and Inspector Hannah then went to Room 162 of the Ramada Inn, the room occupied by Mr. and Mrs. Stoner under the name of Mr. and Mrs. James Clark. Mrs. Stoner would not allow the authorities to enter the room, whereupon Hannah attempted to gain entrance by having the hotel staff ask to clean the room. Captain Gaia attempted to get into the room by using a pass key, and both his and the Inspector's attempts were unsuccessful.
 
 
 11
 After their unsuccessful attempts to get into the room, the authorities drove the police car by the room some 10 to 15 minutes later with Robert Stoner handcuffed in the back seat. Thereupon, when Mrs. Stoner saw her husband in this position, she opened the motel room door. During the interval between the two unsuccessful attempts to get in the room and the opening of the door, there were five officers who were close to the motel room door and had their guns drawn.
 
 
 12
 When the authorities went into the motel room, they searched for Sides and ascertained that he was not there, after a minute or two. Inspector Hannah, however, remained in the room for a period of approximately 1 1/2 hours and was later joined by Inspector Holman. While in the room, the authorities discovered a rack of six suits, two cardboard boxes and a price tag. Following this, Detective Maxwell brought employees from the clothing store to determine if the suits had been stolen, and one of them identified the suits but could not state positively that they were stolen.
 
 
 13
 When Captain Gaia recited these events and swore to them in an affidavit to a municipal judge of West Memphis, a search warrant was issued and executed. As a result of the search warrant, a total of thirty-two suits were found.
 
 
 14
 Following the hearing on the motion to suppress, prior to trial, District Judge Robert McRae reached the determination that there was no consent by Mrs. Stoner to the search of the motel room. He reiterated this conclusion at the trial, and we agree with it. As stated in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions. Those exceptions are six in number and are set out in detail by Judge Edwards in the case of United States v. Nelson, 459 F.2d 884 (6th Cir. 1972), at pp. 887 and 888.
 
 
 15
 The evidence construed in the light most favorable to the government does not fall within any of the six exceptions to the general requirements for a search warrant. The government contends that the initial search was valid on the grounds that it was a search for an armed fugitive, and that it was necessary to protect the lives of the search officers. This argument must fall in view of the fact that there was no evidence that Stoner, who purported to be James Clark, was in fact Bobby Clark, a friend of Bill Sides. This being the case, there was no reason for believing that Bill Sides was in the motel room. They had no information that Sides was an acquaintance of either Mr. and Mrs. Robert Stoner or Mr. and Mrs. James Clark, and in fact there was no such relationship between them and Sides.
 
 
 16
 Since we hold that the initial search was invalid, the subsequent search incident to a search warrant must fall, since there was no independent source for the fruit of this "poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Company v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). This being the case, the convictions of the appellants must be reversed.
 
 
 17
 We observe in passing that other contentions raised by the appellants are without merit. The contention that the government is bound by the wholesale value of the thirty-eight suits, rather than the retail value, is not convincing. See Schaffer v. United States, 362 U.S. 511, 517, 518, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); Gordon v. United States, 164 F.2d 855 (6th Cir. 1947), cert. denied 333 U.S. 862, 68 S.Ct. 741, 92 L.Ed. 1141; Husten v. United States, 95 F.2d 168 (8th Cir. 1938).
 
 
 18
 Also, the evidence introduced as to shoplifting by appellants Robert Stoner and Joyce Martin at the J. B. Hunter Store was properly admitted as showing prior offenses of a like nature. See United States v. Neal, 344 F.2d 254 (6th Cir. 1965), and United States v. Denton, 336 F.2d 785 (6th Cir. 1964).
 
 
 19
 Other points raised by appellants as to severance and personal examination of jurors on voir dire are likewise without merit.
 
 
 20
 The judgments of conviction are reversed.
 
 
 
 *
 Honorable Charles M. Allen, United States District Judge for the Western District of Kentucky, sitting by designation