David A. HAEFELI, Petitioner,

v.

Paul CHERNOFF et al., Respondents.

Misc. Civ. A. No. 73–155–T.

United States District Court,
D. Massachusetts.

May 22, 1975.

Malvine Nathanson, William A. Nelson, Mass. Defenders Committee, Boston, Mass., for petitioner.

Dennis J. LaCroix, Asst. Atty. Gen., Boston, Mass., for respondents.

## OPINION AND ORDER

TAURO, District Judge.

On April 10, 1970, a Suffolk County Grand Jury named David Haefeli in seven indictments, each charging him with knowingly receiving stolen property.[1] Haefeli was tried in Suffolk Superior Court and was convicted by a jury on all charges. He was adjudged a "common receiver of stolen goods" and was given a consolidated sentence of three to seven years. Mass.Gen. Laws Ann. ch. 266, § 62.[2] His conviction was affirmed by the Massachusetts Supreme Judicial Court. Commonwealth v. Haefeli, [1972] Mass.Adv.Sh. 423, 279 N.E.2d 915.

■ Haefeli now petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[3] He alleges that the failure of the state trial court to grant his pre-trial motion to suppress evidence which was later introduced against him deprived him of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.[4]

### I

On November 24, 1969, the Commonwealth Avenue apartment of Ms. Mona Lacy was robbed. Among the items that were stolen were Ms. Lacy's Star

---

1. Indictment No. 47997 charged the petitioner with receiving 13 checks, each worth $.10, belonging to Mona Lacy; No. 48359 charged the petitioner with receiving a piece of mail worth $.06 belonging to Anne Lewin; No. 48362 charged the petitioner with receiving a piece of mail worth $.06 belonging to Lois Brenda Turk; No. 48366 charged the petitioner with receiving a piece of mail worth $.10 belonging to Joseph Shain; and No. 48369 charged the petitioner with receiving a piece of mail worth $3.62 belonging to Joseph Shain.

2. Mass.Gen.Laws Ann. ch. 266, § 62 provides:
   Whoever is convicted of buying, receiving or aiding in the concealment of stolen or embezzled property, knowing it to have been stolen or embezzled, having been before convicted of the like offense, and whoever is convicted at the same sitting of the court of three or more distinct acts of buying, receiving or aiding in the concealment of money, goods or property stolen or embezzled as aforesaid, shall be adjudged a common receiver of stolen or embezzled goods and shall be punished by imprisonment in the state prison for not more than ten years.

3. 28 U.S.C. § 2241(c)(3) gives the district courts jurisdiction to grant habeas corpus relief only if the petitioner "is in *custody* in violation of the Constitution or laws . . . of the United States." (emphasis supplied) The fact that petitioner is currently on parole does not deprive the court of jurisdiction since he still is "in custody" within the meaning of the statute. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). See Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).
   The issues which petitioner raises in this proceeding were raised by him in the Massachusetts courts. Accordingly, he has also exhausted his state remedies as required by 28 U.S.C. § 2254. See note 5 *infra.*

4. Since the Supreme Court's decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), federal courts have "regularly entertained" habeas corpus petitions filed by state prisoners alleging that unconstitutionally seized evidence was admitted at their trials. Chambers v. Maroney, 399 U.S. 42, 46 n. 5, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Market check cashing courtesy card, blank personal checks with her name and address printed on them, her Delaware driver's license and several credit cards.

While investigating this incident, Boston Police Officer Robert E. Hughes learned that a number of worthless checks had been cashed at a Star Market by a woman using the name Mona Lacy. The store had a system of photographing persons who cashed checks there. The woman claiming to be Mona Lacy appeared in twenty different photographs. Hughes circulated these photographs to businesses in the general vicinity of the Star Market.

Hughes' investigation also disclosed that Haefeli, whom he had previously known, was involved in a worthless check cashing scheme and that the woman in the Star Market photographs had been seen leaving a number of establishments accompanied by a male fitting Haefeli's general description. Hughes also learned that the man and woman in question were using an automobile which had not been reported stolen, but which was registered to a Mr. Kaler.

On January 12, 1970, Mr. Jarvis, a Boston realtor, called Hughes and reported that a woman resembling the one in the circulated Star Market photograph had been in his office and was expected to return. Later that day Hughes and Detective William Sullivan, took up a surveillance position outside Jarvis' office.[5]

At about 5:45 p. m. that evening the two officers observed the automobile registered to Mr. Kaler drive up and park on Commonwealth Avenue about fifty feet from the real estate office. Hughes recognized the driver as Haefeli

---

5. Neither the opinion of the Supreme Judicial Court affirming Haefeli's conviction, nor the findings of the Superior Court after the suppression·hearing, make mention of a second police officer (Sullivan) accompanying Hughes at the time of the stake-out and arrest. Yet the transcript of the motion to suppress demonstrates that another officer was with Hughes from the time of the stake-out until the automobile was taken to the police station. TR. 18, 29. Further, Detective Sullivan's affidavit accompanying his request for a search warrant of Haefeli's apartment indicates his participation. Appendix B.

Moreover, the parties now stipulate that the arrest and search was effected by more than one officer. Appendix A. This stipulation was entered into following a conference convened by this court in an effort to resolve the apparent ambiguity in the record on October 24, 1974. As a result, the Commonwealth confirmed that there were at least two officers present during the stake-out and arrest. In the interests of comity, this court then stayed these proceedings in order to give the Supreme Judicial Court an opportunity to reconsider its earlier decision which had been premised on the assumption that only one police officer had been involved.

The parties then filed a joint request for rehearing in the Supreme Judicial Court on November 12, 1974. The request was denied on December 20, 1974. In denying the petition, the Supreme Judicial Court chose not to reconsider the merits on the basis of the corrected record, but held only that the Superior Court's findings of fact— which omitted mention of the presence of a second policeman—were amply supported by the record. See Appendix C. The court suggested, however, that the petitioner could seek discretionary relief at the trial court level pursuant to Mass.Gen.Laws ch. 278, § 29. Repondent argues that until petitioner does so he cannot be said to have exhausted his state remedies pursuant to 28 U.S.C. § 2254. This court does not agree.

The exhaustion doctrine does not require that a habeas petitioner pursue all possible avenues of state collateral relief before a federal court may hear his constitutional claim. Brown v. Allen, 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469 (1953). See Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). It requires only that he present the same legal theories to the state courts that he has in his habeas petition in order to give those courts a fair opportunity to rule upon them before the federal judiciary enters the case. Picard v. Conner, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed. 2d 438 (1971). This Haefeli has done. The fact that portions of the state court record have been more fully developed in the course of the federal proceedings, without a showing of inexcusable neglect on the part of the petitioner in the state proceedings, does not deprive him of his federal forum now. Townsend v. Sain, 272 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

and his passenger as the woman shown in the Star Market photograph.

Both passengers got out of the car and went into the real estate office. Hughes followed them inside and asked the woman whether she was Mona Lacy. She said she was not, and gave him an assumed name. Unbeknownst to Hughes at that time, the woman, Janice Kaler, was the automobile owner's daughter using the car with her father's permission. Haefeli also gave an assumed name. Neither of the assumed names matched that of the automobile's registered owner, although the woman claimed it was her car. The two were then arrested.

Hughes then went out to the automobile "to find out who the owner of the car was." Transcript of Hearing on Motion to Suppress at 23 [hereinafter TR.]. He shone a flashlight through a closed window and saw on the floor an envelope with checks sticking out approximately one inch. From his position outside the car, he could not see anyone's name on the checks. (TR. 23, 24, 28, 29.) Hughes then opened the car door, took the checks out of the envelope and saw the name "Joseph Shain" imprinted on them. The checks eventually became the basis of one of the seven indictments on which Haefeli was convicted.[6]

Hughes then opened the glove compartment, ostensibly looking for the registration, and found a Star Market check cashing courtesy card issued to Mona Lacy. The officers then seized the automobile and brought it to the station. No warrant was obtained or permission given to search the car. (TR. 29).

Following the arrest of Kaler and Haefeli, and the search of the car, Hughes went to an address given to him by Haefeli which proved to be a rooming house. Hughes learned from the proprietor that Haefeli and Kaler had been living together in room 3 on the first floor. Detective Sullivan then secured a search warrant for the room from the Roxbury District Court. Later that same evening, the warrant was executed. The articles seized from the room formed the basis of the remaining six indictments against Haefeli.[7]

Haefeli contends, as he did in the Massachusetts courts, that the materials Hughes seized from Kaler's car were inadmissible against him because no warrant was obtained.[8] He also maintains his claim that the warrant obtained by Detective Sullivan for the subsequent search of the Beacon Street apartment was issued without probable cause.

This court agrees that the warrantless search of the automobile was improper and that the evidence obtained therefrom should have been suppressed. Moreover, since the fruits of the automobile search formed the basis for the subsequent apartment search, the evidence seized at that time was unconstitutionally admitted as well.

## II

Initially, the Commonwealth argues that the checks which Hughes saw protruding from the envelope on the floor of Kaler's car were in plain view and, therefore, could be seized without a warrant. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). This court does not agree.

Evidence of a crime clearly visible to an officer, who has a right to be in a position to see the evidence, may be seized without a warrant and intro-

---

6. Indictment No. 48369. *See* note 1 *supra*.

7. Indictment Nos. 47997, 48359, 48362, 48366, 48367 and 48368. *See* note 1 *supra*.

8. There is no claim that Haefeli lacked sufficient possessory interest in the Kaler automobile at the time of the search to deprive him of standing to raise these issues. *Cf.* Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

duced at trial. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Once an otherwise lawful intrusion is in progress, and "the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it." *Id.* at 467–68, 91 S.Ct. at 2039. Of course, the plain view doctrine is only applicable where it is *immediately apparent* to the officer that what he has seen and wishes to seize is evidence of a crime. *Id.* at 466, 91 S.Ct. 2022.

■ The plain view doctrine is inapplicable to this case because, as a factual matter, the incriminating checks were not in plain view at the time Hughes first saw them. All that Hughes saw when he peered through the window of the car was approximately one inch of otherwise unidentifiable checks protruding from an envelope on the car floor. There was nothing inherently suspect about this envelope or its visable contents so as to make it "immediately apparent" they constituted incriminating evidence. The plain view doctrine, therefore, is inapposite.[9]

### III

■ ■ Because the plain view doctrine is inapplicable, Hughes' intrusion into the automobile and inspection of its contents (as opposed to looking through its window aided by a flashlight) [10] constituted a "search" within the meaning of the Fourth Amendment. As such, his failure to obtain a warrant was *per se* unreasonable unless the Commonwealth can meet its burden of showing that one of the narrowly-defined exceptions to the warrant requirement apply in these circumstances. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ ■ The only exception which the Commonwealth cites in support of the warrantless search is the so-called "automobile exception" established in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 2543 (1925) and refined by Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).[11] But those cases do not justify the warrantless automobile search in this case. *See also* Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed. 2d 325 (1974); Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37

9. Although no findings of fact relating to the plain view doctrine were made by the Superior Court when it ruled on Haefeli's motion to suppress, the Supreme Judicial Court made oblique reference to the subject when it noted that Hughes' initial glance through the car window "did not constitute a search of the automobile." Commonwealth v. Haefeli, 279 N.E.2d at 921. This court agrees with that observation. Marshall v. United States, 422 F.2d 185 (5th Cir. 1970); Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965). What it does not accept is the argument that information Hughes had at the time of the arrest, or that he obtained when he looked inside the car, provided him justification to make the additional intrusions which he subsequently made. For the reasons discussed above, those additional invasions do not come within the carefully defined limits of the plain view doctrine.

The fact that the envelope was first seen by Officer Hughes with the aid of a flashlight does not affect the possible application of the plain view doctine. Marshall v. United States, 422 F.2d 185, 188–89 (5th Cir. 1970). *Accord,* United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); United States v. Hanahan, 442 F.2d 649, 654 (7th Cir. 1971); Fagundes v. United States, 340 F.2d 673, 676 (1st Cir. 1965).

10. See note 9 *supra.*

11. Because Haefeli and Kaler were inside the office and at least fifty feet away from the automobile at the time they were arrested, its search cannot be labeled as one incident to their arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). It would be unreasonable to even suggest that the contents of the automobile were subject to their control.

L.Ed.2d 596 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Dyke v. Taylor Implement Co., 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931).

*Carroll,* the cornerstone of the automobile exception, teaches that an automobile may be stopped and searched on the open highway without a warrant, provided there is some "exigency" or realistic danger that the evidence would otherwise be lost. *Chambers* adds the further lesson that an otherwise justified warrantless search may be accomplished either immediately or later at the police station. "The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station." Coolidge v. New Hampshire, 403 U.S. 443, 463 n. 20, 91 S.Ct. 2022, 2036 (1971) (emphasis in original).

The instant case presents only the question of whether the initial warrantless intrusion by Hughes into the Kaler automobile was justified. Assuming arguendo that the police had probable cause to obtain a search warrant, this court holds that there were no exigent circumstances present which justified a search without a warrant.

Officers Hughes and Sullivan had staked out the area of the realty office, awaiting their, suspects. Haefeli and Kaler approached soon thereafter, parked their car, and went into the office. Hughes delayed a confrontation until they were inside, and at least fifty feet away from the car. Once inside, Haefeli and Kaler were arrested almost immediately, kept there, and were effectively cut off from any access to the car or its contents. *Cf.* Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

The car itself was not stopped on the open highway, but was parked unobtrusively on a well-lit urban thoroughfare.[12] With Haefeli and Kaler confined inside the office, and no indication from Hughes' prior investigation that the pair had confederates who could approach the car, there was no need to move it immediately, nor was there any danger that the evidence contained therein would be lost while a warrant was being obtained.

Less drastic alternatives than a search were available to the officers. For example, either of them could have guarded the car while the other phoned from the real estate office to obtain assistance and begin the process of obtaining a warrant.[13] That the process could have been completed with little inconvenience is underscored by the fact that Sullivan obtained and executed a warrant for Haefeli's apartment later that very evening, within hours after the arrest.

The Supreme Judicial Court found exigent circumstances in the "immediate need" of Hughes to investigate the ownership of the Kaler automobile. Both suspects did give Hughes assumed names. Neither name was that of the car owner Kaler. The person who later turned out to be Joyce Kaler did claim ownership of the car. On these facts, the argument is made that Hughes had a responsibility to immediately investigate circumstances which then suggested either the theft or the unauthorized

---

12. There was no showing that the car was illegally parked, obstructing traffic, or otherwise creating a nuisance. *See* Cady v. Dombroski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed. 2d 706 (1973).

13. Indeed, the Supreme Court has suggested that urban policemen might follow just such a course while awaiting the procurement of a warrant for the search of an automobile. Cady v. Dombrowski, 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

use of an automobile.[14] The suggestion is that if Hughes left the automobile while he tried to obtain a search warrant, he could not be sure that the car would be there upon his return.

Had there been only one policeman present at the scene, as the Supreme Judicial Court was incorrectly informed,[15] such a conclusion might well be warranted. But, Hughes was not alone. Two officers were involved in the search and arrest. The automobile was parked. The prisoners were secure in an office far from the car. They had no accomplices. To characterize such circumstances as being exigent would be nothing more than an attempt to rationalize police conduct after-the-fact, and would effectively establish a *per se* rule permitting a warrantless search any time an automobile was even remotely involved in an arrest. The establishment of such a *per se* rule would, no doubt, make life easier both for law enforcement officials and the courts. But the resulting dilution of existing Fourth Amendment rights of privacy would be too great a price to pay for such administrative and judicial convenience.

### IV

■ In the affidavit accompanying the warrant for Haefeli's apartment, Sullivan stated that he had information on which a magistrate could find probable cause to believe that stolen property was being concealed at that location.[16] The information relied upon by Sullivan was the material which had been seized by Hughes from the automobile earlier that same evening, specifically the Star Market courtesy card issued to Mona Lacy. The warrant therefore was the fruit of an illegal search and the evidence obtained thereby should have been suppressed.

■ The Supreme Court held long ago that an unlawful search taints all evidence obtained at the time of the search as well as through leads later uncovered by the search. Silverthorne Lumber Company, Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (Holmes, J.); United States v. Stoner, 487 F.2d 651, 653 (6th Cir. 1973); United States v. Soviero, 357 F.Supp 1059 (S.D.N.Y.1972).

The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.

Silverthorne v. United States, 251 U.S. at 392, 40 S.Ct. at 183. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This rule applies even when the government has independent information available which could have formed the basis of a valid search warrant had it been used. United States v. Paroutian, 299 F.2d 486 (2d Cir. 1962).

In the instant case it is clear from the terms of Sullivan's own affidavit

---

14. At the time Hughes made the search, he already knew to whom the car was registered. A search of the glove compartment for a registration certificate, therefore, would only provide him information he already had. Nothing in the car would disclose whether it was stolen or whether it was being used with Mr. Kaler's permission.

Moreover, nowhere does the record indicate that Hughes complied with the standard procedure for checking registration provided for by Massachusetts Law. In Massachusetts, an operator of a motor vehicle is required to produce a proper certificate of registration upon a policeman's demand. Mass.Gen.Laws Ann. ch. 90, § 21. Failure to have a certificate of registration in some easily accessible place is a criminal offense, Mass.Gen.Laws Ann. ch. 90, § 11, and refusal to comply with a policeman's request to produce the certificate subjects the operator to immediate arrest Mass.Gen.Laws Ann. ch. 90, § 21.

15. *See* note 5 *supra*.

16. The affidavit is reproduced in full in Appendix A.

that the evidence illegally seized by Hughes formed the sole basis for the request for a search warrant. Accordingly, the evidence found at the apartment was illegally seized as well.

Because both the automobile and apartment searches were illegal, the evidence thereby obtained which was introduced at Haefeli's trial should have been suppressed. The Superior Court's failure to do so deprived Haefeli of his rights under the Fourth and Fourteenth Amendments. This court therefore grants his petition for Habeas Corpus.

So ordered.

## APPENDIX A

Honorable G. Joseph Tauro
Chief Justice
Supreme Judicial Court
of the Commonwealth of Massachusetts
Suffolk County Courthouse
Pemberton Square
Boston, Massachusetts 02108

Re: Commonwealth v. David A. Haefeli

S.J.C. No. 14,795

Your Honor:

This is a request, submitted jointly by the defendant, and by the Attorney General's Office on behalf of the Commonwealth, for a rehearing of the above-entitled case.

In 1971, defendant Haefeli appealed to this Honorable Court from a conviction for receiving stolen goods, arguing the invalidity of police searches of an automobile and his apartment. This Court affirmed the conviction in an opinion reported at 1972 Mass.Adv.Sh. 423, a copy of which is enclosed herewith.

Following the affirmance by this Court of the judgment of conviction, the defendant brought a petition in The United States District Court For The District of Massachusetts for a Writ of Habeas Corpus, alleging the same constitutional grounds pressed before this Court. The case was referred to the Honorable Joseph L. Tauro, United States District Court Judge.

The facts of the automobile search are stated at pages 424–426 of this Court's opinion. The opinion discusses the actions of Officer Robert Hughes, and leaves unclear whether or not Officer Hughes was acting alone at the time of the arrest and search. However, it can be inferred from the record in this case that more than one officer was present at this time. After speaking recently with Officer Hughes, counsel for the Commonwealth has stipulated in the federal habeas corpus proceeding that in fact Officer Hughes was assisted by one other policeman. The fact that the arrest and search was effected by more than one officer was not focused on by the parties in their briefs to this court in the 1971 appeal.

The United States District Judge has stated to counsel for both parties that the presence of more than one officer in this situation is a factor that he considers material in his deliberations in the habeas corpus proceeding before him. As the United States District Judge remains uncertain as to whether or not this Honorable Court considered in its decision the fact that two police officers, rather than one, were involved in the challenged arrest and search, he has, in the spirit and interest of comity, stayed the habeas corpus proceeding before him in order to give this Court the opportunity to reconsider its decision, should it so desire.

Counsel for the Commonwealth and for the defendant join in this application for a rehearing by the full bench of this Honorable Court.

Respectfully,

/s/ William A. Nelson

William A. Nelson
Assistant Chief Appellate Attorney
Massachusetts Defenders Committee

/s/ Dennis J. Lacroix, Esquire

Dennis J. Lacroix, Esquire
Deputy Assistant Attorney General
for the Commonwealth

APPENDIX B

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                        ROXBURY DISTRICT
                                          MUNICIPAL COURT

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

G.L. c. 276, ss. 1 to 7; St. 1964, c. 557 As Amended

I, William H. Sullivan, being duly sworn, depose
(Name of Applicant)

1. I am a detective, Boston Police Department, District 14
   (Describe position, assignment, office, etc.)

2. I have information based upon (describe sources, facts indicating reliability of source and nature of information; if based on personal knowledge and belief, so state) (If space is insufficient, attach affidavit or affidavits hereto) photographs of a female subject whom I arrested this date for Receiving Stolen Property and also for Forging & Uttering stolen checks and also of a male subject whom I arrested in her company for Receiving Stolen Property. I have probable cause to believe, as a result of evidence found on these subjects (in their possession) at the time of their arrest, that these two subjects have been involved in the larcenies of mail (U. S.) on this District. These subjects (David Haefeli, 21 years, 901 Beacon St., Boston and Janice Kaler, 19 years of 901 Beacon St., Boston) had identification in the name of one Mona Lacy, 1152 Commonwealth Ave., Allston—whose apartment had been burglarized on November 24, 1969; checks and identification were reportedly stolen in this break.

3. Based upon the foregoing reliable information—and upon my personal knowledge and belief—and attached affidavits—there is probable cause to believe that the property hereinafter described—has been stolen—or is being concealed, etc. and may be found in the possession of David Haefeli—Janice Kaler
   (Name of person or persons)
   at premises 901 Beacon St., Boston.
   (Identify number, street, place, etc.)

4. The property for which I seek the issuance of a search warrant is the following (here describe the property as particularly as possible).
   Stolen mail, checks and identification, such as driver's licenses, credit cards, charge plates.

WHEREFORE, I respectfully request that the court issue a warrant and order of seizure, authorizing the search of (identify premises and the person or persons to be searched) Room #3, on the first floor of a 3 story brick rooming house numbered 901 Beacon St., Boston and directing that if such property or evidence or any part thereof be found that it be seized and brought before the court; together with such other and further relief that the court may deem proper.

                                  /s/ William H. Sullivan

APPENDIX C

SUPREME JUDICIAL COURT FOR THE COMMONWEALTH
COURT HOUSE
BOSTON

FREDERICK J. QUINLAN
CLERK
WILLIAM M. CLORAN
ASSISTANT CLERK

December 20, 1974

William A. Nelson, Esq.
Massachusetts Defenders Committee
120 Boylston Street
Boston, Massachusetts

Dennis J. Lacroix, Dep. Asst. Atty. Gen.
State House
Boston, Massachusetts

Gentlemen:

Your request for rehearing in case No. 14,795, Commonwealth v. David A. Haefeli, has been considered by the court and is denied. Enclosed you will also find "Memorandum In Re Denial Of Application For Rehearing" together with the appendix in support of this decision.

Very truly yours,

/s/ Frederick J. Quinlan
Frederick J. Quinlan, Clerk

———◆———

COMMONWEALTH vs. DAVID A. HAEFELI, Mass.Adv.Sh. (1972) 423. (Opinion Issued March 2, 1972.) December 20, 1974

Supreme Judicial Court
Number 14,795

MEMORANDUM IN RE DENIAL OF APPLICATION FOR REHEARING

1. On May 28, 1970, the defendant was found guilty by a jury on seven indictments charging the crime of knowingly receiving stolen goods in November, 1969, and January, 1970. He was adjudged a common receiver of stolen goods (G.L. c. 266, § 62) and was sentenced to the Correctional Institution at Walpole for a term of from three to seven years. He sought appellate review by this court by way of exceptions which we overruled on March 2, 1972.

2. One of the exceptions argued by the defendant and overruled by this court was to the denial of his motion to suppress evidence obtained in a warrantless search of an automobile which he had driven to the place where it was searched. The trial judge held a hearing on the motion and made findings of fact which are incorporated in the defendant's bill of exceptions. A copy of those findings, which this court relied on in overruling the exception relating to the search of the automobile, is attached as Appendix A hereto.

3. The findings of the judge describe in considerable detail the investigation of the case by a police officer, Robert E. Hughes, the information known to him, his actions leading up to the arrest of the defendant, his search of the automobile immediately following the arrest, and his later search of the

defendant's apartment under the authority of a search warrant. At no place in the findings does the judge refer to any other police officer as participating in or being present at the time and place of Officer Hughes's arrest of the defendant and search of the automobile.

4. The judge found further that after arresting the defendant and a companion, Janice Kaler, Officer Hughes "went to 901 Beacon Street for the purpose of ascertaining the exact place of residence occupied by Haefeli," that he there talked with the rooming house proprietor and learned that the defendant and his companion jointly occupied room number 3. Thereupon "an affidavit in support of application for search warrant —a photocopy of which is before me and will be marked at the conclusion of this statement of facts as Exhibit 1—was lodged with the Roxbury District Court, and pursuant thereto a search warrant— which will be marked Exhibit 2—was issued." In the execution of the search of room number 3 "the other physical evidence which is the subject of the motion to suppress . . . was seized." Neither the application for the search warrant nor the warrant itself is reproduced in the bill of exceptions, but both are incorporated in the bill by reference pursuant to S.J.C. Rule 1:06(3), 351 Mass. 736. The affidavit in support of the application for the search warrant is reproduced in the defendant's brief. It is signed by Boston Police Department detective William H. Sullivan under date of January 12, 1970. It refers to the two persons arrested as "a female subject whom I arrested this date for Receiving Stolen Property and . . . a male subject whom I arrested in her company for Receiving Stolen Property."

5. The bill of exceptions includes a summary of the evidence presented at the hearing on the motion to suppress. The evidence consisted almost entirely of the oral testimony of Officer Hughes and of the defendant. No other witness testified at the hearing. The summary makes no reference to the presence of any police officer other than Officer Hughes at the time and place the automobile was searched. The evidence summarized in the bill supports the findings made by the judge in denying the motion to suppress. It may be argued that the statement of Officer Sullivan in the affidavit in connection with the application for the search warrant would have supported a finding that he was present when the defendant was arrested, had the trial judge made such a finding, but the trial judge made no such finding.

6. "The narrow issue before us on the denial of the motion to suppress is whether the evidence warranted the findings made by the judge. . . . The determination of the weight of the evidence is the function and responsibility of the judge who saw and heard the witnesses, and not of this court. . . . [When, as here,] the evidence was sufficient to warrant all of the subsidiary findings made by the judge, and . . . his subsidiary findings support his general findings or conclusions based thereon. . . . we accept the judge's findings as true, and we do not substitute our judgment for his thereon." Commonwealth v. Murphy, Mass.,[a] 289 N.E.2d 571 (1972), Commonwealth v. D'Ambra, 357 Mass. 260, 263, 258 N.E.2d 74 (1970). This court, therefore, properly reviewed the trial judge's ruling denying the motion to suppress on a consideration of only those facts which were found by the judge and included in the bill of exceptions.

7. This court has now received a request, dated November 12, 1974, submitted jointly by the defendant and by the Attorney General's office, asking for a rehearing of his case. The ground for the request, as stated therein, may be summarized as follows: the defendant is now seeking a writ of habeas corpus in the United States District Court, alleging "the same constitutional grounds pressed before this Court" as to the search of the automobile. The opinion of this court

a. Mass.Adv.Sh. (1972) 1679, 1683.

"leaves unclear whether or not Officer Hughes was acting alone at the time of the arrest and search." It "can be inferred from the record . . . that more than one officer was present at this time." Counsel for the Commonwealth "has stipulated in the Federal habeas corpus proceeding that in fact Officer Hughes was assisted by one other policeman, . . . [but this fact] was not focused on by the parties in their briefs to this court in the 1971 appeal." The Federal judge "has stated to counsel for both parties that the presence of more than one officer in this situation is a factor that he considers material in his deliberations in the habeas corpus proceeding before him, . . . [that he] remains uncertain as to whether or not this Honorable Court considered in its decision the fact that two police officers, rather than one, were involved in the challenged arrest and search [and, therefore,] he has, in the spirit and interest of comity, stayed the habeas corpus proceeding before him in order to give this Court the opportunity to reconsider its decision, should it so desire."

8. In deciding the case of Commonwealth v. Haefeli, this court did not consider "the fact that two police officers, rather than one, were involved in the challenged arrest and search," for the obvious reasons that the trial judge did not so find, and the parties did not raise or argue the point in their briefs or oral arguments.

9. The defendant is apparently seeking relief in the Federal Court on a claim of constitutional error based on assumed (or stipulated) facts which are different from those found by the trial judge and included in the bill of exceptions presented to this court. "The burden is upon the excepting party to show clearly in his bill of exceptions the evidence and circumstances upon which he relies to establish error of law concerning a matter where an exception has properly been saved." Commonwealth v. Morris, 358 Mass. 219, 224, 263 N.E.2d 458, 462 (1970). The defendant's bill did not

satisfy this burden as to the claim which he is now advancing in the Federal Court. He is there attempting to obtain relief on facts which he had an opportunity to establish, but did not establish, in the courts of this State. This court may not, and should not, rewrite his bill of exceptions or permit him to rewrite it at the full court level. If any relief is now available to the defendant in the courts of this Commonwealth in this situation, it may be limited to discretionary relief at the trial court level. See G.L. c. 278, § 29, as appearing in St.1966, c. 301. Perhaps the hard truth facing the defendant is that he may not now, as a matter of right, compel the reopening of the State court proceedings simply to enable him to raise a point which he had an opportunity to raise originally in the trial court and again in connection with his appeal to this court, but which he failed or neglected to do at both levels.

10. The fact that the office of the Attorney General has joined the defendant in requesting the reconsideration does not require a different result.

Appendix A: Findings by Trial Judge

### COMMONWEALTH v. DAVID A. HAEFELI, Mass.Adv.Sh. (1972) 423.

### FINDINGS BY TRIAL JUDGE ON DEFENDANT'S MOTION TO SUPPRESS

(Starting at page 2 of Bill of Exceptions)

A voir dire was held on the question of the suppression of certain items seized in the automobile and in the apartment. After the hearing the trial court made the following findings of fact:

"Robert E. Hughes, a police officer, attached to District 14, Brighton, was investigating the matter of various offenses involving the passing of worthless bad checks. A number of these bad checks were passed at Star Market Company, where apparently the proprietors have a system of photographing persons who come there and cash checks.

"Hughes had in his possession various photographs of this same person, who, on

several occasions, had cashed worthless checks at the Star Market Company. He had to some extent circularized these photographs or reproductions of them to certain business people in the general vicinity where some of these offenses were committed.

"He also had information from one or more of the victims of the bad check passing, that the person whose photograph he possessed was accompanied by a male, and he was given a general description of that person.

"A real estate firm located at 1105A Commonwealth Avenue was one place where the photograph of the bad check passer had been shown or given to the person in charge.

"On January 12, 1970, one Jarvis, in charge of the real estate firm, informed the police authorities that a girl resembling the photographs shown him or in his possession had been in the office and intended to return. As a result of this, Hughes arranged a 'stake-out'. He observed a vehicle pull up near the real estate office [about 50 feet away] on Commonwealth Avenue, and observed a female later identified as Janice Kaler alight from that automobile.

"Kaler, Hughes recognized as being the person whose photograph or photographs he possessed as being the bad check passer.

"A male also alighted from this motor vehicle answering the general description of the person who was accompanying the woman passing the bad checks. Both went into the real estate office.

"Haefeli, because of his haircut and a moustache, presents definitely identifiable features.

"Also under investigation by Hughes at this time were numerous thefts from the United States mail, particularly involving one Mona Lacy, whose apartment had also been burglarized on November 24, 1969.

"Hughes entered the real estate office and inquired from the defendant Kaler whether she was 'Mona Lacy.' Some-

what startled, as the officer put it, Kaler answered in the negative and gave a name not her true name.

"Hughes recognized the Defendant Haefeli under that name, and when the defendant Haefeli was inquired of as to his name, he gave the false name 'David Becker.'

"In terms of probable cause, I find as a fact that Hughes had the strongest evidence in his possession that these two persons were the persons who had committed one or more felonies, that is, larceny by check.

"The male Defendant had driven the automobile, an inquiry was made as to who owned the automobile, and false names were again given.

"After placing the Defendants under arrest, Hughes borrowed a flashlight and proceeded to the automobile, which, in fact, belonged to Kaler's father, and she had permission to use it. That was not known at the time.

"Hughes flashed his light into the interior of the automobile and there saw in a manila envelope a quantity of bank checks with one or two inches of same exposed. He opened the door and seized these under circumstances which I find do not require their suppression.

"He then pursued a search in an effort to determine who the true owner of this automobile was and looked for the registration of the car in the glove compartment; and in so doing he came across an identification card issued to Mona Lacy by Star Market Company for the purpose of cashing checks at that place of business.

"Hughes, either by what was said to him by Haefeli, otherwise known as Becker, or by what Hughes knew previously, went to 901 Beacon Street for the purpose of ascertaining the exact place of residence occupied by Haefeli. He talked with the rooming house proprietor and obtained the information that Room No. 3 on the first floor was occupied by Haefeli.

"A description was then given of the Defendant Kaler, and Hughes received

**1092**

information that she also occupied Room No. 3 jointly with Haefeli.

"Thereupon, an affidavit in support of application for search warrant—a photocopy of which is before me and will be marked at the conclusion of the statement of facts as Exhibit 1—was lodged with the Roxbury District Court, and pursuant thereto a search warrant—which will be marked Exhibit 2—was issued.

"A search was made of Room No. 3 occupied allegedly jointly by David Haefeli and Janice Kaler, and the other physical evidence which is the subject of the motion to suppress and which the Commonwealth intends to introduce into evidence on the various indictments, was seized.

"I find as a fact that there was probable cause on the part of the police to apply for a search warrant and that the affidavit in support of that application is sufficiently precise so that, in my view, no defect exists either in the affidavits or the issuance of the search warrant or the warrant itself.

"In accordance with the foregoing findings of fact, the motion to suppress was denied, and the defendant's exception was saved."