LUELLA McGILVERY, administratrix, *vs.* BOSTON ELEVATED
RAILWAY COMPANY.

Suffolk.   November 9, 1908. — January 7, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence*, Employer's liability.   *Boston Elevated Railway Company.   Railroad.
Words*,  "Railroad."

The means used for the transportation of passengers by the Boston Elevated Rail-
way Company in the subway in Boston on February 13, 1905, did not constitute
a " railroad " within the provisions of R. L. c. 106, § 71, cl. 3, and therefore an
employee of that corporation, who on that day was injured by reason of the neg-
ligence of a person in the employ of the company and in charge and control of
a signal used for the starting and stopping of trains at the Scollay Square
station in the subway, could not recover under such clause of the statute.

St. 1908, c. 420, which amended R. L. c. 106, § 71, cl. 3, by adding provisions as to
elevated railways so that the wording of its provision imposing upon an em-
ployer a liability for an injury to an employee caused by " the negligence of a
person in the service of the employer who was in charge or control of a signal,
switch, locomotive engine or train upon a railroad " was so changed as to make
an employer liable for such an injury caused by " the negligence of a person in
the service of the employer who was in charge or control of a signal, switch,
locomotive engine, elevated train or train upon a railroad or elevated railway,"
is not declaratory of the law as it existed under the Revised Laws, but imposes
upon elevated railway companies a burden to which they had not been subject
under the Revised Laws.

TORT under R. L. c. 106, § 71, cl. 3, for personal injuries
alleged to have been received by the plaintiff's intestate while
he was in the employ of the defendant on February 13, 1905,

and to have been caused by the negligence of a person in the service of the defendant who was in charge or control of a signal, namely, a starting gong, at the Scollay Square subway station in Boston. Writ in the Superior Court for the county of Suffolk dated April 20, 1905.

The case was tried before *Sherman*, J. At the close of the evidence the presiding judge was of the opinion that the case did not fall within R. L. c. 106, § 71, cl. 3, but, informing the parties that he should "set aside any verdict that might be rendered for the plaintiff and report the case," he, in order "to avoid as far as possible the necessity of another trial," submitted the case to the jury with instructions that, if they were of opinion that the plaintiff's intestate while in the exercise of due care was injured by reason of the negligence of some employee of the defendant in charge or control of a signal, the plaintiff would be entitled to a verdict.

The jury found for the plaintiff in the sum of $2,500, and, upon motion by the defendant, the presiding judge set aside the verdict as against the law, ruling that the case was not within R. L. c. 106, § 71, cl. 3, and reported the case for determination by this court, it being agreed by the parties among other things that, if the ruling was correct, judgment was to be entered for the defendant.

*J. P. Magenis*, (*J. B. Boland* with him,) for the plaintiff.

*S. H. E. Freund*, (*R. G. Dodge* with him,) for the defendant.

HAMMOND, J. The crucial question is whether as contended by the plaintiff the train of the defendant is a train upon a railroad within the meaning of R. L. c. 106, § 71, cl. 3, or, more briefly stated, whether the railroad of the defendant is a railroad within the meaning of that clause. If it is not, then there must be judgment for the defendant.

The clause first appears in St. 1887, c. 270, and provides that under certain conditions named in the statute a right of action may arise against an employer in favor of an employee who, while in the exercise of due care, is injured by reason of "the negligence of any person in the service of the employer who has the charge or control of any signal, switch, locomotive engine or train upon a railroad." At the time this act was passed the defendant had not been chartered, and it is not contended by

the plaintiff that there was any elevated railway in the Commonwealth. In *Fallon* v. *West End Street Railway*, 171 Mass. 249, it was held that a street railway car, operated by electricity upon a street railway track, was not a "locomotive engine or train upon a railroad" within the meaning of this clause. In giving the opinion of the court Morton, J., used the following language: "But we think that by the words 'locomotive engine or train upon a railroad' must be understood a railroad and locomotive engines and trains operated and run or originally intended to be operated and run in some manner and to some extent by steam. This undoubtedly was the sense in which the words were used by the Legislature when the statute was enacted, and we do not feel justified now in giving to them the broad construction for which the plaintiff contends. Possibly a railroad, where the motive power has been changed in part or altogether from steam to electricity, or some other mechanical agency, but which retains in other respects the characteristics of a steam railroad, would come within the purview of the act."

The original charter of the defendant is to be found in St. 1894, c. 548. This statute was the outgrowth of an agitation extending over several years with reference to rapid transit in Boston and its suburbs; and it provided in the first part for the incorporation of the defendant, and in the last part for the creation of the Boston Transit Commission, with power to build certain subways. The defendant was empowered to construct "lines of elevated railway" through certain specially designated streets (§ 6), and to take by "purchase or otherwise" certain lands outside the limits of these ways, for the purpose of constructing its railway and other necessary structures (§ 11). And it was subject to all general laws "which now are or may hereafter be in force relating to railroad corporations, so far as applicable, except as hereinafter provided"; but it was forbidden to transport freight or baggage (§ 1). The railway was to be constructed according to the Meigs system or such other plans or systems (except the Manhattan system then in use in New York), as the board of railroad commissioners might approve. It is unnecessary to go further into the details of this charter. While the corporation was authorized to use locomotives and

trains with steam as the motive power and its road in some other respects resembled the ordinary steam railroad, still its route lay almost exclusively through the public ways, and in substance it was an elevated street railway, the purpose being to give more rapid transit to street travel.

No railway was built under this charter until after the important amendments which were made to it by St. 1897, c. 500. By that statute the restriction as to the Manhattan system was removed, and steam could not be used as a motive power (§ 2); and it was provided that with certain exceptions the corporation should have all the powers and privileges and be subject to all the duties, liabilities and restrictions of street railway companies so far as applicable; and finally, the provision of the first section of the original charter that the corporation should be subject to the general laws relating to railroad corporations " is hereby repealed." It is urged, however, by the plaintiff that throughout this amending statute the term " railroad " is frequently used to describe the defendant and in connection with its cars and other equipment. While this is true it does not seem to us to be conclusive as to the legal character of the defendant or of its road.

It is still further urged by the plaintiff that by R. L. c. 111, § 1, a railroad is described as " a railroad or railway of the class usually operated by steam power," and that the defendant's road may properly be held as coming within this class. But the history of this clause seems to look another way. The Revised Laws were enacted ten years after railroad corporations had been authorized to use electricity as motive power (St. 1892, c. 110), and five years after the defendant had been authorized to build the railway in question. In St. 1874, c. 372, § 2, a codification of the railroad acts up to that time, the term " railroad " was defined to mean " a railroad or railway operated by steam power," and it was not until R. L. c. 111, § 1, that the definition was changed to " a railroad or railway of the class usually operated by steam power." Between 1874 and 1902 the Legislature had authorized railroads operated by steam power to use electricity as a motive power; and, realizing this and the possible tendency of the times to a more extensive use of electricity for this purpose, the Legislature adopted a change of phraseology which would indicate more clearly than the old phrase would the class

of commercial railroads. The new phrase in our opinion was not to enlarge the class, but simply, under the changed conditions to indicate more precisely the individuals included in the former term. Therefore, even if the question rested here, the indications would point to the conclusion that at the time of the accident to the plaintiff's intestate, which occurred in 1905, the defendant's road was not a railroad within the meaning of the clause in question.

The question, however, is made comparatively easy of solution by reason of St. 1908, c. 420. This statute expressly changes this clause 3 which we have been considering, by adding to it the term " elevated railway " as distinguished from the term " railroad," and expressly makes the provision of the clause applicable to a train upon an elevated railway. We regard this statute not as declaratory of the law as before existing, but as amendatory. And the amendment consisted in imposing upon the elevated railway companies a burden to which they had not been subject before that time. It follows that at the time of the accident the railroad of the defendant was not a railroad within the meaning of R. L. c. 106, § 71, cl. 3, and that there must be

*Judgment for the defendant.*