AVIRA E. LIBBY, administratrix, *vs.* NEW YORK, NEW
    HAVEN AND HARTFORD RAILROAD COMPANY.

EDITH G. LIBBY, administratrix, *vs.* SAME.

Barnstable.    October 6, 1930. — December 19, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Railroad,* Motor car, Statutory signals.   *Statute,* Construction.

A penal statute is not to be extended merely by implication.

A railroad motor car operated by gasoline by a railroad corporation on
railroad tracks, which had seats for passengers and a baggage com-
partment and was not equipped for drawing other cars but merely
for its own operation, and which was between forty and forty-five
feet long and was operated upon the same principle as an ordinary
automobile, was equipped with a hand brake, an air brake, a wind
shield wiper, and a bell located on the roof at the front end of the car
and had a headlight on the front end and other lights on the front
and rear ends and a whistle on the roof, made of brass and sounded,
much the same as a horn on an automobile, by air controlled from the
inside of the car where the operator sat, did not come within the
description of the words "engines or cars" in § 232 of G. L. c. 160;
and an action could not be maintained under that section for death
or conscious suffering caused by a failure in 1927 to give, on such a
vehicle, the signals required by § 138 of that chapter.

TWO ACTIONS OF TORT, with declarations in each con-
taining eight counts. Writs dated February 9, 1928.

The actions were tried together in the Superior Court
before *Whiting,* J. Before the close of evidence for the
defendant, the plaintiff in the first action waived all counts
in her declaration except the seventh and the plaintiff
in the second action waived all counts in her declaration
excepting the seventh and eighth, in all of which counts
recovery was sought solely under G. L. c. 160, § 232, for
failing to give the signals required by § 138.

Material evidence is stated in the opinion. At the close
of the evidence, the defendant moved that a verdict be
ordered in each action in its favor. The motions were
denied. Material rulings then asked for by the defendant

are stated in the opinion. The rulings were refused. There were verdicts for the plaintiffs, in the first action in the sum of $7,605.50 on the seventh count in the declaration, and in the second action for $7,605.50 on the seventh and $1,000 on the eighth count. The defendant alleged exceptions.

*M. G. Gonterman,* for the defendant.

*G. Alpert,* (*J. P. Feeney* with him,) for the plaintiffs.

CROSBY, J. These are actions of tort to recover for the death of the plaintiff's intestate in each case and for the conscious suffering of the intestate in the second case, as the result of a collision between an automobile and a railroad motor car at a railroad crossing at grade on Hyannis Road, a public highway in Barnstable in this Commonwealth. The jury returned verdicts for the plaintiffs, and the cases are before us on exceptions saved by the defendant.

The railroad track at the crossing runs east and west and Hyannis Road runs north and south. The accident occurred about 9:15 P.M. on February 23, 1927. The railroad motor car is also referred to in the record as a " gasoline rail car " and a " gasoline bus." It was operated by gasoline, and there was evidence tending to show the following facts: It was between forty and forty-five feet long and was operated upon the same principle as an ordinary automobile. It was equipped with a hand brake, an air brake, a windshield wiper, and a bell located on the roof at the front end of the car. There was a headlight on the front, and other lights on the front and rear ends. There was a whistle on the roof, made of brass and sounded by air, which was much the same as a horn on an automobile, and it was controlled from the inside of the car where the operator sits. The car had seats for passengers and a baggage compartment; it was not equipped for drawing other cars, but merely for its own operation, and on the night of the accident was not carrying any passengers. The night of the collision was dark and misty and the windshield wiper was working. The car at that time was being operated by a locomotive

engineer in the employ of the defendant and the only person with him was a flagman.

There was evidence that the automobile in which the plaintiffs' intestates were riding at the time of the collision was operated by one Smith; that it was a misty night and had been raining, and as Smith came to a place in the road which obscured a view of the railroad he put his car into second speed and reduced the speed to ten or twelve miles an hour, and as he approached the crossing he was travelling at about seven or eight miles an hour; that at no time did he hear a whistle or bell of an engine or locomotive, nor was his attention directed by either of the intestates to the blowing of a whistle or the ringing of a bell; that there was nothing said by either of the intestates; that he was familiar with the crossing and knew there were no trains scheduled at that time or after six o'clock at night; that as he got very close to the crossing he heard neither a bell nor a whistle, but as he was about on the track he noticed " a glimmer of light " and then almost instantaneously the collision occurred; that the window on the left side of the automobile was open; that his brakes were in good condition, and the lights were on at the time; that the intestates were sitting on the seat with him and that there was room enough for all of them. There was evidence that the plaintiff's intestate in the first case was rendered unconscious by the collision and died without regaining consciousness at 5 P.M. the following day, and that the intestate in the second case was conscious after the accident and died about 11:30 P.M. the same night.

The counts upon which both cases were submitted to the jury were based on G. L. c. 160, § 138, for failure to give the statutory signals. All other counts in the declarations were waived by the plaintiffs respectively. At the close of the evidence the defendant moved in each case that a verdict be directed in its favor. These motions were denied subject to the defendant's exceptions. The defendant also requested the judge to give certain rulings, which were refused, and its exceptions to such

refusal were duly saved. The eleventh and fifteenth requests were as follows: " Upon all the law and the evidence, the defendant in the operation of the railroad motor car involved in the collision was under no statutory duty to give the signals prescribed in G. L. c. 160, § 138 "; and " The evidence is insufficient to warrant a finding of negligence of the defendant contributing to the collision as alleged in the seventh and eighth counts of the plaintiffs' declarations."

G. L. c. 160, § 232, upon which these actions are brought, provides in part that " If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing such as is described in section one hundred and thirty-eight, and it appears that the corporation neglected to give the signals required by said section, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision . . . or, if the life of a person so injured is lost, to damages recoverable in tort, as provided in said section three, unless it is shown that, in addition to a mere want of ordinary care, the person injured or the person who had charge of his person or property was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

It is plain that unless the " railroad motor car," however otherwise described, comes within the description of the words " engines or cars " set forth in G. L. c. 160, § 232, these actions cannot be maintained. For nearly sixty years these words have been reënacted in the various amendments and revisions of the statutes without change. St. 1871, c. 352. St. 1874, c. 372, § 164. Pub. Sts. c. 112, § 213. R. L. c. 111, § 268. St. 1906, c. 463, Part II, § 245. Section 138 was enacted in its original form in 1835. G. L. c. 160, § 232, is in its nature a penal statute. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 376. Penal statutes must be construed strictly " and not extended by equity, or by the probable or supposed

intention of the legislature as derived from doubtful words; but that in order to charge a party with a penalty, he must be brought within its operation, as manifested by express words or necessary implication." *Cleaveland* v. *Norton*, 6 Cush. 380, 383. *Hosmer* v. *Sargent*, 8 Allen, 97, 99. *Commonwealth* v. *Worcester & Nashua Railroad*, 124 Mass. 561, 563. A penal statute is not to be extended merely by implication. *Harvey* v. *Easton*, 189 Mass. 505. It is an anciently established rule in the interpretation of statutes that such a sense is to be made upon the whole statute that no clause, sentence or word shall prove superfluous, void or insignificant if by any other construction it may be made useful and pertinent. *Commonwealth* v. *McCaughey*, 9 Gray, 296, 297. Railroad motor cars operated by gasoline such as the one in question could not be included in G. L. c. 160, § 232, without rendering the words " steam whistle " superfluous. It appears that the motor car in the case at bar was equipped with an air whistle. If the statute is to be literally enforced against such motor cars it would follow that a steam boiler must be kept in operation on them for no other purpose than to sound the whistle. It is plain that the Legislature could not have intended those statutes to include the operation of railroad motor cars. The fact that a statute affects public safety does not warrant an interpretation which will make it comply with changed conditions and different modes of travel when the plain language of the statute makes it inapplicable to new conditions and different modes of travel.

It must be assumed that it was the intention of the Legislature when this statute was originally enacted to refer solely to engines propelled by steam. The cars mentioned in the statute plainly mean cars attached to engines propelled by steam power. Although since the original statute was enacted other means of operating engines by railroads have been invented and are in use, no change has been made in the language of the statute which extends its application to other means of propelling engines. Section 138, referred to in § 232, pro-

vides that "Every railroad corporation shall cause a bell of at least thirty-five pounds in weight, and a steam whistle, to be placed on each locomotive engine passing upon its railroad." This section makes it plain that the engines referred to in § 232 are limited to locomotive engines propelled by steam. If engines are operated by other means than steam, § 138 cannot be complied with, as engines so equipped and operated would be unable to use a steam whistle upon them. It is reasonable to assume that if the Legislature had deemed it advisable to make the statute applicable to engines so operated, appropriate amendments to the statutes would have been enacted. The railroad motor car in question was substantially different from a locomotive engine; its motor power was obtained by gasoline. It is manifest that such a motor car is not a locomotive engine or an engine or a car such as is referred to in § 232. Moreover, it did not come within the terms of § 138.

. G. L. c. 160, § 1, is significant: it defines a railroad as "a railroad or railway of the class usually operated by steam power." A railroad corporation is defined as "the corporation which lays out, constructs, maintains or operates a railroad of the class usually operated by steam power." In *Fallon* v. *West End Street Railway,* 171 Mass. 249, an action brought under the employers liability act, St. 1887, c. 270, § 1, cl. 3, it was said at pages 249, 250, of a street car operated by electricity: "So far as any definition has been given by statute to the word 'railroad' it has been confined to railroads operated by steam. Pub. Sts. c. 112, § 1 . . . But we think that by the words 'locomotive engine or train upon a railroad' must be understood a railroad and locomotive engines and trains operated and run or originally intended to be operated and run in some manner and to some extent by steam. This undoubtedly was the sense in which the words were used by the Legislature when the statute was enacted, and we do not feel justified now in giving to them the broad construction for which the plaintiff contends . . . We think that a car belonging

to it [an electric street railway], and operated in the manner in which cars upon street electric lines usually are, cannot be said to be a locomotive engine or a train upon a railroad within the meaning of the statute in question." See *McGilvery* v. *Boston Elevated Railway,* 200 Mass. 551, 553; *Dow* v. *Boston Elevated Railway,* 207 Mass. 486; *Rodriques v. New York, New Haven & Hartford Railroad,* 210 Mass. 305; *Jarvis* v. *Hitch,* 161 Ind. 217. The words "locomotive engine" and "steam whistle" unquestionably refer to motor engines generating and driven by steam power, and used in their common and ordinary meaning cannot be so extended as to include a railroad motor car such as is here involved. The statute construed in *Spokane & Inland Empire Railroad* v. *Campbell,* 217 Fed. Rep. 518, was of much broader scope than that here under consideration.

As the counts in the declarations upon which the plaintiffs rely are predicated upon the alleged failure to give the statutory signals as required by G. L. c. 160, § 138, it follows that in each case the exception to the refusal of the judge to direct a verdict for the defendant and the exceptions to his refusal to give in substance the defendant's eleventh and fifteenth requests must be sustained. In view of the conclusion reached, it is unnecessary to consider other exceptions taken at the trial.

The entry in each case must be

*Exceptions sustained.*
*Judgment for the defendant.*