COMMONWEALTH vs. KENNETH A. COURTNEY.

Middlesex.    September 18, 1978. — January 23, 1979.

Present: KEVILLE, GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Instructions to jury. *Identification. Alibi.*

At a criminal trial, an instruction to the jury which effectively excluded from their consideration evidence of the victim's consumption of alcohol which was relevant to her identification of the defendant constituted reversible error. [6-7]

INDICTMENTS found and returned in the Superior Court on April 10, 1975.

The cases were tried before *Mazzone, J.*

*John C. Ottenberg* for the defendant.

*Robert M. Raciti,* Legal Assistant to the District Attorney, for the Commonwealth.

GOODMAN, J. The defendant was convicted on indictments charging breaking and entering and assault (G. L. c. 266, § 14), indictment no. 1769, and assault and battery, indictment no. 1771; he appeals pursuant to G. L. c. 278, §§ 33A-33G. The defendant assigns as error (among other assignments of error) an instruction to the jury in answer to a question which they put to the judge after they had retired to deliberate. We conclude that the instruction was erroneous.

The relevant evidence follows: The first witness was a woman, then seventy-three years old (the victim), who testified that on October 25, 1974, at about 2:30 A.M., she awoke in her apartment on the eighteenth floor of a building in Cambridge and went into the kitchen to get some aspirin. She then put out the light and went back to bed. Thereupon the light went on; and she saw a man, whom she identified at the trial as the defendant, standing in her room. He made an obscene remark, and she told him to get out or she would call the police. She got out of bed, and the intruder tripped her and struck her; she became unconscious. The police were called and she was taken to the Mount Auburn Hospital. There, at about 6:30 A.M., Sergeant Amoroso of the Cambridge police department interviewed her, and she gave him a description of her assailant. He returned to the apartment building and went into the victim's apartment with the building superintendent and the defendant, who was a maintenance man in the building. Sergeant Amoroso looked through the apartment, and another police officer took photographs. After the group left the apartment and went downstairs to the first floor, Sergeant Amoroso told the defendant that the description the victim had given him fit the defendant; Sergeant Amoroso asked the defendant to come to the station. The defendant consented and subsequently was taken to be viewed by the victim at the hospital, also with his consent. There, she identified the defendant.

Defense counsel attacked the identification, eliciting from Sergeant Amoroso circumstances of the confrontation at the hospital which were suggestive. (But, see *Commonwealth* v. *Cox*, 6 Mass. App. Ct. 968 [1979].) Defense counsel also elicited from Sergeant Amoroso that there were empty beer cans in the apartment, and the building superintendent who had gone up to the apartment with Sergeant Amoroso testified that he saw a "lot of beer cans in [the] barrel and trash can" and that "[t]here was one or two on top of the counter." A neighbor, Mrs. All-

sopp, who lived in another building in the same apartment complex across a courtyard, testified that the victim was "constantly drinking" and that on or about the noon previous to the incident, she had seen the victim and the victim appeared drunk. The victim herself testified that she had not drunk alcoholic beverages for a week or two prior to the incident. Defense counsel developed various other discrepancies relevant to the identification and elicited from the victim that in December, 1972, she told a doctor at the Cambridge City Hospital that she had previously hallucinated.

Mrs. Allsopp and her husband also testified that the defendant had been in their apartment from about 12:30 A.M. on October 25, with a number of other people. Mr. Allsopp testified that he went to bed at about 2:00 A.M., and Mrs. Allsopp testified that the defendant was still in their apartment when she saw the police arrive at the victim's apartment.

During the course of the trial the victim's hospital report from the Mount Auburn Hospital was introduced in evidence, and the prosecuting attorney read portions of it, including a description of the victim's injuries. Defense counsel also read various parts of the record, including an entry dated October 29: "Physical improvement continues but — she's quite a little nervous — Has not had any alcohol for a while."

The jury retired to deliberate on the third day of trial at 11:30 A.M.; they returned to the courtroom at 4:30 P.M. with the following query: "The jury wants to know if there was a blood test taken upon the victim's admittance to the hospital that would determine the amount of alcohol in the victim's system, if any. . . . What were the blood tests taken for?" The judge properly instructed them not to speculate as to the purpose of any blood tests which the hospital record might disclose; however, he went on to instruct the jury that: "The testimony that you have about the events that night comes from [the victim] herself and from Detective Amoroso, who observed her

throughout the evening subsequent to the events when he was at the hospital and went back to the hospital." By this instruction the judge confined the jury to the victim's testimony and the observations at the hospital made by Sergeant Amoroso on the issue whether the victim's identification might have been affected by her consumption of alcohol. See *DiIorio* v. *Tipaldi*, 4 Mass. App. Ct. 640, 646-647 (1976). The instruction vitiated the defendant's closing argument, which raised that issue and marshalled the evidence of her drinking. The effective exclusion of this evidence from consideration by the jury was error. It was obviously relevant to her ability to perceive. *Commonwealth* v. *Barber*, 261 Mass. 281, 290 (1927). Leach & Liacos, Massachusetts Evidence 120 (4th ed. 1967). Compare *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738, 742-743 (1978), and cases cited. Further, as the trial judge stated in his main charge: "Identification appears to be the major issue in this case." In the circumstances — where the jury were being called upon to choose between an identification by a single witness and an alibi and where the erroneous instruction was in response to a specific concern voiced by the jury — we cannot say that the error might not have affected the result.

Since there must be a new trial, we need not deal with the defendant's argument that the alibi charge was erroneous, and that a reversal was required for that reason though no exception was taken. This case was tried before *Commonwealth* v. *Cobb*, 5 Mass. App. Ct. 421, 423-424 (1977), and we assume that at a new trial the judge will avoid characterizing alibi as a defense and will not single out alibi evidence for special attention without a countervailing instruction that "an alibi may be the only refuge of the innocent." See *Commonwealth* v. *McLeod*, 367 Mass. 500, 502 (1975). Other matters concerning the charge which the defendant raises are not likely to recur, and the questions raised regarding the admission of evidence are best left to be determined at a new trial, if they arise.

We think it appropriate for the guidance of counsel at a new trial to comment on the argument that counsel was inadequate in failing to move to suppress the identification instead of trying the question to a jury. It seems to us that a motion to suppress is not always the most fruitful tactic. Defense counsel, if faced with a likelihood that such a motion will be denied, may well decide to forgo a voir dire, which might provide a rehearsal for the identifying witness, and rather choose to attempt through cross-examination to persuade a jury that the identification should not be credited.

Accordingly, on indictment no. 1769, the judgment is reversed, and the verdict set aside. Since that indictment and indictment no. 1771, which was placed on file after a verdict of guilty, should be disposed of together, the verdict on indictment no. 1771 is set aside. *Commonwealth* v. *Boone*, 356 Mass. 85, 88 (1969). See *Commonwealth* v. *Delgado*, 367 Mass. 432, 437-438 n.4 (1975). Contrast *Commonwealth* v. *Hoffer*, 375 Mass. 369-370 n.1 (1978).

*So ordered.*