COMMONWEALTH vs. STANTON LEE.

Suffolk.   April 16, 1980. — September 17, 1980.

Present: ARMSTRONG, ROSE, & PERRETTA, JJ.

*Firearms.   Statute,* Construction.   *Probable Cause.   Search and Seizure.
Constitutional Law,* Search and seizure, Waiver of constitutional rights.
*Evidence,* Relevancy and materiality.   *Words,* "Enclosed in a case."

The exemption available under G. L. c. 140, § 129C, fourth par. (*h*), does
not require that a rifle be enclosed in a case that is specifically manu-
factured as a gun case to the exclusion of all other intended uses for
such a container.  [522-524]

At the trial of a defendant charged with illegal possession of a rifle in
violation of G. L. c. 140, § 129C, the judge erred in instructing the jury
with respect to the applicability of the exemption in § 129C, fourth par.
(*h*), that they must determine whether fourth par. 4(*h*) required a show-
ing that a container was in fact a case for a gun.  [521-525]

An affidavit in support of an application for a search warrant which
stated that the police, while at the scene of a shooting, had received in-
formation from a bystander that he had seen the defendant and others
place a rifle in a brown box in a van and that the police, upon looking
through a window in the van, had observed a long brown box which
fit the description given by the bystander was sufficient to support the
issuance of a warrant to search the van.  [525-528]

The fact that Federal authorities who had arrested the defendant on
Federal charges failed to inform him, upon giving Miranda warnings,
that any of his statements could be used against him in a pending
Massachusetts proceeding did not require suppression of the statements
at his Massachusetts trial.  [528-530]

There was no merit to a defendant's contention that a judge erred in ex-
cluding his testimony which would have established that statements he
made to Federal authorities were the result of coercion where the de-
fendant was permitted to describe threats when he could attribute
them to a particular agent and only in the absence of such attribution
was his testimony excluded.  [530]

At the trial of a defendant charged with illegal possession of a rifle, the
judge acted well within the bounds of his discretion in permitting
limited testimony of the events which led to the defendant's arrest, in-
cluding information concerning a shooting at a restaurant.  [530-531]

At a criminal trial, there was no error in permitting a Federal agent to
testify as to his interrogation of the defendant in New York where the
testimony was relevant to the charge against the defendant. [531]
At the trial of a defendant charged with illegal possession of a rifle, the
judge did not err in admitting evidence pertaining to the abundance of
ammunition and ammunition clips found with the rifle. [532]
At the trial of a defendant charged with illegal possession of a rifle, there
was no error in the judge's instructions with respect to the burden of
proof on the defense of an exemption under G. L. c. 140, § 129C,
fourth par. (h). [532]

INDICTMENT found and returned in the Superior Court
Department on November 13, 1978.

The case was tried before McGuire, J.

Dennis J. Kelly (Mark A. Ash with him) for the defend-
ant.

Sharon D. Meyers, Legal Assistant to the District At-
torney (Michael J. Traft, Assistant District Attorney, with
her) for the Commonwealth.

PERRETTA, J. The defendant appeals from his conviction
under G. L. c. 140, § 129C, possession of a rifle without a
firearm indentification card.[1]  Because of a prejudicially er-
roneous jury instruction concerning the defendant's defense
to the indictment, we reverse the judgment.

On September 28, 1978, Boston Detective Peter O'Malley
responded to a report of a shooting incident at the Munch N'
Brunch, a restaurant located in the Chinatown section of
Boston.  When he arrived at the scene, other police officers
were already in the process of arresting five young men, one
of whom was the defendant.  As these young men were be-
ing escorted to and placed in a police wagon, an elderly
man approached Detective O'Malley.  This man pointed to
the group of suspects and told O'Malley that he had seen
them place a rifle in a brown box in a van parked about a

---

[1] The defendant was also indicted for assault with a dangerous weapon,
G. L. c. 265, § 15A, and assault with intent to murder, G.L. c. 265, § 15.
The judge allowed the defendant's motion to sever those charges from the
trial of the present indictment.

block or two away. He described the rifle as long with a black barrel, a wooden stock and an ammunition clip attached under the firing mechanism. He also stated that the van was white with a red stripe and bore New York license plates. Refusing to go with Detective O'Malley and two other officers directly to the van, the man led the three officers a part of the way and then pointed them in the direction of the van. The officers proceeded in the indicated direction and saw a Ford Econoline van which matched the description they had been given by the elderly man. Peering through the windshield, the officers observed a long brown box under a bunk bed in the left section of the van. (See *Commonwealth* v. *Haefeli*, 361 Mass. 271, 280 [1972], habeas corpus granted sub nom. *Haefeli* v. *Chernoff*, 394 F. Supp. 1079, see esp. 1083 n.9 [D. Mass.], rev'd 526 F.2d 1314 [1975] [glance through a car window does not constitute a search].) The van was towed to the police station, where the officers determined from the defendant's registration that it belonged to him. Detective O'Malley sought and obtained a search warrant for the van, and execution of the warrant produced a rifle in the long brown box, ammunition clips and loose rounds of ammunition.

General Laws c. 140, § 129C, first par., as amended by St. 1973, c. 892, § 3, provides: "No person, other than . . . one who has been issued a license to carry a pistol or revolver or an exempt person as hereinafter described, shall own or possess any firearm, rifle, shotgun or ammunition unless he has been issued a firearm identification card . . . ." While the defendant produced no evidence to show that he had the requisite identification card to possess the rifle legally, there was evidence which put in issue the question whether the defendant was an "exempt person," as described in § 129C, fourth par. (*h*), as amended through St. 1973, c. 892, § 4. See *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977); *Commonwealth* v. *Dunphy*, 377 Mass. 453, 460 (1979). This exemption makes § 129C inapplicable to "[p]ossession of rifles and shotguns and ammunition therefor by nonresidents traveling in or through the

commonwealth, providing that any rifles or shotguns are unloaded and enclosed in a case."

The evidence as to whether the rifle was unloaded and enclosed in a case came from Detective O'Malley's responses to the Commonwealth's questions concerning his actions after he obtained the search warrant for the van:

> A: "I believe I went upstairs first and obtained some keys that were in the property of the defendant, and I went downstairs and I went into the truck, the Ford Econoline van. I went in and I seized, I took the box."
>
> ". . . .
>
> Q: "You seized the box. What did you do next?"
> A: "I opened the box."
> Q: "What did you find?"
> A: "I found a 30 caliber M-1 semi-automatic rifle."

The box which Detective O'Malley opened was approximately thirty inches long, eight and one-half inches wide, and five inches deep. When asked whether the rifle he found in the box was loaded, Detective O'Malley replied, "[I]t had a large banana clip on the bottom which was removed, and there were bullets, shells, bullets inside the clip." He stated that the rifle was loaded, that the clip "was attached and part of the rifle that you have seen." When asked how the clip was attached, Detective O'Malley gave a visual demonstration.

Against this backdrop of the recited evidence, we set out in full that portion of the judge's jury charge pertaining to whether the defendant was an exempt person under § 192C, fourth par. (*h*):

> "[S]o you have a determination of fact to make here, and that is whether or not Stanton Lee was a nonresident traveling in or through the Commonwealth, and whether or not that rifle was unloaded and enclosed in a case.

"So, two questions arise in that respect. Was it loaded or unloaded? Was it in a case or not in a case? So, you would have to decide what that was, that cardboard box. Is it a case or not? You know what a case is. A case is a container. Do you think that the cardboard box is a case or *do you think that the statute calls for a container that is in fact a case for a gun?* It's for you to determine. Those are questions of fact that you must determine before you are able to reach a determination of guilt or innocence in this case.

". . . .

"What is the meaning of that brown box, that cardboard box? Is it a case? It's for you to decide" (emphasis supplied).[2]


We hold that as matter of law § 129C, fourth par. *(h),* does not require that a rifle be enclosed in a case that is specifically manufactured as a gun case to the exclusion of all other intended uses for such a container and that, consequently, the jury instruction was incorrect. It is well established as a principle of statutory construction that "[p]enal statutes must be construed strictly 'and not extended by equity, or by the probable or supposed intention of the legislature as derived from doubtful words; but that in order to charge a party with a penalty, he must be brought within its operation, as manifested by express words or necessary implication.' . . . A penal statute is not to be extended merely by implication. . . . It is an anciently established rule in the interpretation of statutes that such a sense is to be made upon the whole statute that no clause, sentence or word shall prove superfluous, void or insignificant if by any other construction it may be made useful and pertinent." *Libby* v. *New York, N.H. & H. R.R.,* 273 Mass. 522, 525-526 (1930).

---

[2] Defense counsel specifically excepted to the underscored portion of the instruction.

There is nothing ambiguous or unusual about the word "case."[3] "The language of this statute is plain, and therefore it is to be interpreted in accordance with the usual and natural meaning of the words. *Condon* v. *Haitsma,* 325 Mass. 371, 373 [1950]. *Commonwealth* v. *Krasner,* 358 Mass. 727, 729 [1971]." *Commonwealth* v. *Thomas,* 359 Mass. 386, 387 (1971). See also *Commonwealth* v. *McDuffee,* 379 Mass. 353, 364-365 (1979). Compare *Commonwealth* v. *Niziolek,* 380 Mass. 513, 526 (1980). Moreover, G. L. c. 140, § 121, conclusively demonstrates that when the Legislature intended a more limited or technical meaning to attach to specific words employed throughout §§ 122-131F of c. 140, it has explicitly said so. Further, to read § 129C, fourth par. (*h*), as meaning simply a case, rather than mandating a gun case, neither distorts nor minimizes the control over firearms which the Legislature intended to exercise through c. 140, §§ 122-131H, and c. 269, § 10. Reading these provisions as a harmonious and comprehensive statutory scheme of gun control in the Commonwealth, it is obvious that the manifest purposes of these provisions are to prevent the temptation and the ability to use firearms to inflict harm, be it negligently or intentionally, on another or on oneself. While a requirement that a rifle be enclosed in a gun case is consistent with these goals, it cannot be said that enclosure of a rifle in a simple case is inconsistent with them.[4] For discussion of the scheme of gun control

---

[3] The usual and natural meanings of case, container and receptacle as found in Webster's Third New International Dictionary (1971) are as follows. A case is defined as "a box or receptacle to contain or hold something (as for carrying, shipping, or safekeeping)" (346); a container is "a receptacle (as a box or jar) or a formed or flexible covering for the packing or shipment of articles, goods or commodities" (491); and a receptacle is "one that receives and contains something" (1894). See *State* v. *Butler,* 325 So.2d 55, 56 (Fla. Dist. Ct. App. 1976).

[4] Concealment of a firearm is not the gist of the offensive conduct specified in either c. 140, § 129C, or c. 269, § 10, which, while prescribing the conditions under which a person may legally possess and carry a firearm, are silent on the notion of concealment. Thus, if a person carried a firearm on his person but concealed it under his clothing, or if he carried a rifle in a gun case or a case placed in the trunk of his car but concealed the case under

laws, see *Commonwealth* v. *Jackson,* 369 Mass. 904, 911 (1976); *Commonwealth* v. *Seay,* 376 Mass. 735, 738-742 (1978); *Commonwealth* v. *Dunphy,* 377 Mass. at 457; *Commonwealth* v. *Fleurant,* 2 Mass. App. Ct. 250, 256-257 (1974); *Commonwealth* v. *Landry,* 6 Mass. App. Ct. 404 (1978).

Whether a case is sufficient to establish the existence of the exemption under § 129C, fourth par. (*h*), in any particular instance is a question of fact to be answered by a fact finder under appropriate instructions in light of all the circumstances revealed by the evidence. See *Commonwealth* v. *Bartholomew,* 326 Mass. 218, 222 (1950) ("whether the gun was a machine gun as defined in G. L. [Ter. Ed.] c. 140, § 121, as amended," was not a question of law for the judge but "was one of fact to be answered under appropriate instructions"); *Commonwealth* v. *Sperrazza,* 372 Mass. 667, 670 (1977) "([w]hether a gun is a 'firearm' as defined is a question of fact for the jury").[5] The instruction in the present case failed to pass this question to the jury with appropriate guidance. It is the judge's obligation to state the law to the jury so that they may apply it to the facts as they determine them to be. *Commonwealth* v. *Kelley,* 359 Mass. 77, 93 (1971). *Commonwealth* v. *Corcione,* 364 Mass. 611, 618 (1974). *Commonwealth* v. *Dunphy,* 377 Mass. at 458-459.

We cannot regard the error as harmless. The evidence presented to the jury put before them the conjunctive con-

---

other articles in the trunk, he would not be in violation of either statute so long as he fell within an exemption under § 129C on the conditions set out in § 10(*a*). Compare *State* v. *Butler,* 325 So. 2d 55 (Fla. App. 1976); Annot., 43 A.L.R.2d 490 (1955).

[5] See also *Commonwealth* v. *Squire,* 1 Met. 258, 259 (1840) ("[T]he question whether the state of the structure, and its progress towards completion, be such as to constitute it a building, is a question of fact, to be submitted to the jury under proper instructions from the court"); *Commonwealth* v. *Appleby,* 380 Mass. 296, 304 (1980) ("Weapons which are not dangerous per se, but which may be used in a dangerous fashion, may also be 'dangerous weapons.' . . . Generally it is held to be a question for the fact finder whether the instrument was so used in a particular case"); *Jordon* v. *State,* 24 Md. App. 267, 274 (1974); *Commonwealth* v. *Butler,* 189 Pa. Super. 399, 402-403 (1959).

tingencies whether the rifle was unloaded[6] and whether it was enclosed in a case. While the jury's verdict might have been based upon a finding that the rifle was loaded, or that it was not enclosed in a case, or both, it might also have been based upon a finding that the rifle was unloaded but that the long brown box in which it was enclosed was not "in fact a case for a gun," which they determined to be required by the statute. Thus, we are unable to state that the verdict would not have been different had appropriate instructions been given. See *Commonwealth* v. *Courtney*, 7 Mass. App. Ct. 4, 6-7 (1979). See also *Commonwealth* v. *Crosscup*, 369 Mass. 288, 241 (1975).


OTHER ISSUES.


Because it is possible that the defendant will be retried, we dispose of the defendant's remaining allegations of error.

1. *Motion to Suppress Physical Evidence.*

The defendant argues that the warrant authorizing the search of his van issued without probable cause. His argument is two-pronged: (1) because Detective O'Malley based the supporting affidavit upon information received from an unknown and unidentified informant from whom the police had never previously received information, the judge issuing the warrant had no facts upon which he could properly conclude that the informant was trustworthy; and, (2) the information contained in the tip and verified by the officers did not establish probable cause.[7]  See *Aguilar* v. *Texas*, 378

---

[6] Defense counsel's closing argument focused the jury's attention on this factual issue by calling into question Detective O'Malley's testimony and credibility.

[7] The affidavit, sworn to by Detective O'Malley, recited the following facts verbatim: "I have information based upon [:]  While at the scene of a reported shooting at the 'Munch and Brunch' restaurant at 262 Harrison Ave., City I was approached by an older Chinese male who while talking

U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969). In primary reliance upon *Commonwealth* v. *Martin,* 6 Mass. App. Ct. 624, 628-629 (1978), the judge concluded that the affidavit was sufficient. He also concluded that the *Martin* analysis had been made unnecessary by the holding in *United States* v. *Melvin,* 596 F.2d 492, 497 (1st Cir.), cert. denied, 444 U.S. 837 (1979): "[T]he reasonable implication of the affidavit is that the 'unknown male' was a bystander witness, not an informant. Treating him as such — and taking into account that the statement, which formed a simple link in a circumstantial chain, was non-accusatory — we think the demonstration of credibility and reliability that would be required under *Aguilar* and *Spinelli* in the case of an informant is not required here."

The defendant challenges the applicability of the *Martin* and *Melvin* holdings to the present affidavit on the basis of distinctions which we regard as strained. He notes that, unlike the tip in *Melvin,* the tip here was accusatory rather than innocuous, and that the information was volunteered rather than prompted by police inquiries as had occurred in *Martin,* 6 Mass. App. Ct. at 628, and *Commonwealth* v.

---

to me pointed to a group of young Chinese male[s] being put into a police wagon, and stated to me that this group were at a white truck with a red stripe and he seen them with he describes as a long gun with a black barrel and a brown wooden stock with a clip coming from the bottom, that he saw them put this gun into a brown box. He then walked to the intersection of Harrison Ave. and Marginal Road, there he again told myself, Det. Sgt. E. Simmons and Det. J. MacKinnon that he seen the group with a gun describe above in the white van with the red stripe and he stated that it came from New York. He repeatedly refuse to give any of the officers his name, and refuse to approach the vehicle, only pointed in the direction towards Tremont St. The above officers then walked along Marginal Road and when at the intersection of Wash. St., observed a Ford Econoline van white in color with a red stripe on the side with New York registration plate 441 JOG parked at the intersection of Wash. St. and Marginal Rd. When looking into this vehicle from the front window the officers observed a long brown box under what appeared to be a bunk bed on the left side of the truck looking in it from the front. This brown box fit the description given by the older Chinese male in width and apparently in length. Of the 5 males who were taken into the wagon 1 was arrested with a firearm, another Stanton Lee had in his possession a Reg. from N.Y. # 411 JOG that was attached to above van."

*Bowden,* 379 Mass. 472, 474 (1980). Contrary to the defendant's assertions, such facts are not controlling indicia by which we determine whether a person is a bystander witness or an informant and, thus, whether *Aguilar* and *Spinelli* will be liberally or rigidly applied to an affidavit. The law requires that affidavits be read "in a commonsense and realistic fashion." *United States* v. *Ventresca,* 380 U.S. 102, 108 (1965). Rather than create distinctions which defeat this principle, courts have simply reviewed affidavits containing hearsay, whatever its source, to determine whether there is also sufficient information to demonstrate the reliability and credibility of the hearsay information. *Martin,* 6 Mass. App. Ct. at 626, and cases cited. Our reading of the affidavit leads us to conclude that it falls squarely within the holding of *Bowden,* 379 Mass. at 477: "Unlike the anonymous informer, [the cabdriver] was an ordinary citizen who witnessed a violent crime and as such could be regarded as reliable without any prior demonstration of his reliability. See *United States* v. *Rueda,* 549 F.2d 865, 869 (2d Cir. 1977), collecting cases holding that the requirement of known reliability should be relaxed when dealing with eyewitnesses and participants in a crime. Second, there was evidence presented at the hearing which showed corroboration of the cabdriver's information by independent sources. *Commonwealth* v. *Stevens,* 362 Mass. 24, 27 (1972), as well as *Spinelli* v. *United States,* 393 U.S. 410, 415-416 (1969), hold that even if an informant's tip cannot meet the *Aguilar* criteria, the constitutional requirements are met if the tip is corroborated by other sources. See *Draper* v. *United States,* 358 U.S. 307, 313 (1959)." The officers' personal observations corroborated the witness's information in every detailed respect, save one — they did not observe the rifle because they could not until after they had obtained and executed the warrant. Reading the affidavit in a commonsense fashion, that fact does not render the corroboration insufficient. Compare *Commonwealth* v. *Kaufman,* 381 Mass. 301, 303 n.2 (1980). We reject the defendant's contention that the affiant was required to set out whe-

ther the rifle was loaded, whether it had ever been used, and whether the in-custody defendant possessed a registration or other evidence of a right to possess the rifle. See *Commonwealth* v. *Jones*, 372 Mass. at 406-410. Cf. *Commonwealth* v. *Fleurant*, 2 Mass. App. Ct. at 254. Further, the affiant did recite facts showing that the rifle contained a clip. Probable cause is a "belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure." *Carroll* v. *United States*, 267 U.S. 132, 149 (1925). *Commonwealth* v. *Pignone*, 3 Mass. App. Ct. 403, 408 (1975). See G. L. c. 140, § 129C, first par. and fourth par. (*h*). There was no error in the denial of the defendant's motion to suppress physical evidence.

2. *Motion to Suppress Statements.*

While on bail pending trial on the present offense, the defendant returned to New York, where he was later arrested by Federal authorities for violations of Federal gun control statutes unrelated to the present indictment. He made statements to the Federal agents which he sought to suppress as evidence in the present trial.

The judge found that the defendant had been advised of his Miranda rights, that he understood them, and that he voluntarily signed a card waiving them and signed a transcript of his statements. These findings are supported by the evidence, and we will not disturb them. *Commonwealth* v. *Harmond*, 376 Mass. 557, 560 (1978). *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980). Further, these findings justify the judge's legal conclusions, with which we agree. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 428-429 (1980).

The defendant's primary attack on the denial of this motion is based upon the fact that, when the Federal agent delivered the Miranda warnings to the defendant, he did not tell him that any of his statements to Federal authorities could be used against him in the pending Massachusetts proceedings.[8] Based upon this omission, the defendant struc-

---

[8] Specifically, when defense counsel asked the interrogating agent whether he told the defendant his statements could be used at his Massachu-

tures an involuntary waiver argument. See *Commonwealth* v. *Garcia,* 379 Mass. at 429 ("A confession can be voluntary in the legal sense only if the suspect actually understands the import of each Miranda warning"). We do not read that statement as a legal requirement that a defendant be advised of all the ramifications of any waiver of his rights. That is the very reason why he is advised that he has a right to counsel. In relation to the right to remain silent, all a suspect must know is "that he need say nothing at all and that he might then consult with a lawyer if he so desire[s]." *United States* v. *Hall,* 396 F.2d 841, 846 (4th Cir.), cert. denied, 393 U.S. 918 (1968). It is a dangerous path that the defendant asks us to take when he suggests that we impose upon police officers the burden to advise suspects of the legal niceties of their elections under *Miranda* and to predict the course of prosecutions against a defendant. The Constitution does not require it, see *United States* v. *Frazier,* 476 F.2d 891, 899 (D.C. Cir. 1973); *Harris* v. *Riddle,* 551 F.2d 936, 938-939 (4th Cir.), cert. denied, 434 U.S. 849 (1977), and common sense militates against the imposition of such a burden.

The defendant claims that he did not expect to receive legal advice from the Federal agents but only enough information upon which he could make a responsible choice. This argument misses the point of the warnings that the defendant had a right to counsel and a right to refuse to talk with the police until he spoke with his counsel. The fact that he chose not to avail himself of those rights cannot be attributed to any improper or offensive police activity which requires application of the exclusionary rule.

The defendant also alleges error in respect to the denial of his motion because, he claims, the judge erroneously excluded his testimony on the issue of his "understanding" of the Miranda warnings. We have reviewed the questions put to

---

setts trial, the agent answered, "I advised him that anything he said can be used against him in court. . . . I didn't specify what particular jurisdiction, what particular court."

the defendant by his counsel on this topic, and our review leads us to conclude that, once again, by "understanding" the defendant means appreciation of the legal ramifications of his waiver rather than a comprehension of the rights guaranteed to him. We find no error in the exclusion of his answers. *Commonwealth* v. *Garcia*, 379 Mass. at 429-431. See also *Harris* v. *Riddle*, 551 F.2d at 938-939. Lastly, the defendant argues that the judge wrongfully excluded his testimony which would have established that his statements were the result of coercion by the agents. Our reading of the transcript indicates that the defendant was allowed to describe the threats when he could also attribute them to the agent who made them. Only in the absence of attribution was the defendant's testimony excluded. Moreover, even accepting the defendant's testimony as true, as well as the unsupported statements of his counsel, we note simply that such statements by the police fall within the permissible boundaries defined in *Commonwealth* v. *Meehan*, 377 Mass. 552, 564 & nn.5, 6, 7, & 8 (1979), cert. dismissed, 445 U.S. 39 (1980). There was no error in the denial of the defendant's motion to suppress statements.

3. *Relevancy of Certain Evidence.*

a. The defendant complains that Detective O'Malley's testimony concerning his observations when he arrived at the restaurant and the events leading up to his obtaining the search warrant were irrelevant and prejudicial to the defendant and should have been excluded. He argues that the evidence served no purpose but to associate the incidents at the restaurant (see note 1, *supra*) with the rifle in issue. The judge instructed the jury from the outset that while they might hear references to other incidents involving the defendant, that information had the limited purpose of providing them with background information.[9] Whether the

---

[9] "There may be references to other incidents, for example, the Munch N' Brunch . . . but that's only incidental, incidental, and if it is mentioned at all it is mentioned only to make understandable what actually happened in this in order to devote your time and attention to the charge

relevancy of this evidence was outweighed by its potential for prejudice was a matter within the judge's sound discretion. *Green* v. *Richmond*, 369 Mass. 47, 59-60 (1975). *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279, cert. denied, 371 U.S. 852 (1962). In view of the judge's well-timed limiting instructions to the jury (compare *Commonwealth* v. *Ventola*, 351 Mass. 703, 704 [1966], with *Commonwealth* v. *Crehan*, 345 Mass. 609, 613-614 [1963]), the limited and specific charge set out in the indictment, the judge's allowance of the defendant's motion to sever (see note 1, *supra*), and the limited testimony of Detective O'Malley on these points, we conclude that the judge acted well within the bounds of his discretion in allowing the testimony.

b. The defendant also argues that Federal Agent Choo's recitation of his interrogation of the defendant in New York was prejudicial in that it created the impression that the defendant was a "bad character." This argument is without force; in addition, we note that the defendant based his objections at trial upon the ground that the prosecutor was leading the witness. Simply put, there was no error in allowing the agent's testimony.

Moreover, the defendant's argument takes on no force in relation to Agent Choo's testimony concerning the defendant's admission that, some sixteen days prior to the events in question, he had purchased ammunition and the rifle in question in New York using a false name and fictitious identification because "he didn't want the gun coming back to him." To be sure, this evidence was harmful to the defendant. It cannot, however, be said that it was of no probative value, as it went directly to the issue of the defendant's knowing possession of a rifle without an identification card. There was no error in the admission in evidence of this testi-

---

that's brought within the four corners of this indictment, and that's it." This point was again made in the judge's final instructions: "That's the only charge against him, and the fact that there has been very scant reference to the Munch N' Brunch or other people and so forth, disregard that. Disregard it completely because it has nothing to do with this case."

mony. *Green* v. *Richmond*, 369 Mass. at 59-60. *Commonwealth* v. *D'Agostino*, 344 Mass. at 279.

c. The defendant argues that the introduction of evidence pertaining to the abundance of ammunition and ammunition clips was calculated to "horrify the jury" and create the clear implication that "the defendant commits crimes and shoots people." We are of the opinion that the evidence could rightly be regarded as relevant on the issues of knowing possession of the rifle and whether the rifle was loaded. While the argument can be made that this evidence was tenuously connected to these points and cumulative of other more direct evidence,[10] we cannot say that the judge acted outside the limits of his discretion in allowing the evidence to be presented to the jury. *Green* v. *Richmond*, 369 Mass. at 59-60. *Commonwealth* v. *D'Agostino*, 344 Mass at 279.

4. *Burden of Proof.*

The defendant's final contention[11] is that the judge's instructions to the jury relating to the issue of possession of a firearms identification card and proof of the § 129C, fourth par. (*h*), exemption failed to make clear the Commonwealth's burden of proving beyond a reasonable doubt that the defense of § 129C, fourth par. (*h*), was not available to the defendant. The judge's charge in this respect, viewed in its entirety, comported with the law as stated in *Commonwealth* v. *Jones*, 372 Mass. at 406-407, *Commonwealth* v. *Dunphy*, 377 Mass. at 459-460, and *Commonwealth* v. *Jefferson*, 377 Mass. 716, 718 (1979).

To summarize, we conclude as matter of law that § 129C, fourth par. (*h*), does not require that an unloaded rifle be enclosed in a case which is a specially designed case for a gun in order to be available to the defendant as an exemption under § 129C and that, therefore, the jury instruction was

---

[10] *See United States* v. *Kopel*, 552 F.2d 1265, 1270 (7th Cir.), cert. denied, 434 U.S. 970 (1977); Hughes, Evidence § 284 (1961).

[11] Our disposition of this case makes it unnecessary for us to consider the defendant's contention that certain remarks of the prosecutor deprived him of a fair trial, thereby requiring a new trial. See e.g., *Commonwealth* v. *Shelley*, 374 Mass. 466, 470-471 (1978).

prejudicially erroneous.  In all other respects, the defend-
ant's trial was free from reversible error.

*Judgment reversed.*

*Verdict set aside.*